[Civ. No. 16847. Second Dist., Div. Three. Dec. 14, 1949.]

HARRY R. SIME, Respondent, v. A. B. MALOUF et al., Appellants.

Jennings & Belcher and Morris Lavine for Appellants.

E. C. Pyle and George Acret for Respondent.

SHINN, P. J.—This is an appeal by defendants A. B. Malouf, W. B. Malouf, B. B. Malouf, Bertrand L. Ball, Sperry Lawson, Ben Mar Hills Corporation and Ben Mar Hills Apartments, Inc., from a judgment against them in the amount of some $77,000 for fraud and conspiracy to defraud. The complaint originally named various other defendants among whom were five individuals who were directors of Edgerton, Riley and Walter, a dissolved corporation, at the time of its dissolution, Paul T. Sunday and Zack J. Farmer. Sunday died during the pendency of the action and a nonsuit was granted in favor of his personal representative who had been substituted as a party defendant. The court rendered judgment in favor of defendant Farmer and the above mentioned directors. Except as otherwise indicated, the word "defendants" will be used herein to refer collectively to the Maloufs, Ball, and Lawson.

Edgerton, Riley and Walter (herein referred to as E. R. & W.) was a corporation, now dissolved, which in 1937 was engaged in bond and stock brokerage business in Los Angeles. There were only nine shareholders all of whom, with the exception of Mr. Cecil B. DeMille, who was the majority stockholder, took an active part in the company affairs. Mr. DeMille's interests were represented through Mr. Treacy. Plaintiff, Harry Sime, had been employed by E. R. & W. prior to 1937 as a salesman of securities. In 1937, plaintiff and E. R. & W. entered into an agreement evidenced by a letter under date of November 18, 1937, signed by J. E. Edgerton as president, and J. D. Flora as assistant secretary of E. R. & W., bearing the corporate seal, which letter was endorsed "accepted" by plaintiff. The court found this agreement had been duly executed and also that it had later been ratified by E. R. & W. The material portions of the letter read as follows: "This is to confirm our agreement relative to bonds acquired by the undersigned company in the City of Burbank in the district commonly known as Ben Mar Hills. We agree to furnish necessary capital for the purchase of any outstanding bonds or property in said section of said city and provide

any and all necessary working capital to effect a liquidation of our bond holdings in said city either by acquisition and sales of properties or any other legal means to result in disposing or liquidating our bond holdings at a profit. You are to represent us in dealings with other bondholders and in our dealings with the City of Burbank, all contracts or agreements, however, in which we shall become a party are subject to our approval before the same may become effective. These bonds and the liquidation as contemplated shall be on a joint basis between us, all specific and out-of-pocket expenses to be charged to the joint account of yourself and ourselves, profits and/or losses to be divided equally between us, the profits to be distributed at such dates as are mutually agreed upon between us. It is understood, however, that all costs and expenses incident hereto advanced by us pursuant to this agreement are to be deducted before any distribution of profits is made to either of us. It is further agreed that you may at your option at any time acquire one-half of the bonds held by us against property in said section of said City of Burbank by paying to us our costs thereof plus one-half of the expenses herein advanced by us.'' Evidence was presented at the trial tending to prove that the purported contract was not actually executed until more than a year after its date; however, there was other evidence that the instrument did truly reflect the oral agreement under which the parties had been operating since 1937. Pursuant to the agreement Sime and his associate, Tad Travers, engaged in continuous and successful efforts to acquire certain delinquent improvement bonds of the city of Burbank from the bond owners; negotiated for and secured execution of a contract with the city of Burbank under which the bonds could be used to bid upon and thereby acquire various delinquent parcels of real property in the Ben Mar Hills section; and obtained a release of certain tax liens, penalties and interest charges against the property on account of the delinquent street assessments. Sime also performed various other substantial services for the furtherance of the project which need not be recounted in detail.

On February 1, 1939, an action was filed by one William E. Smith, a resident of the city of Burbank, to enjoin the performance of the terms of the contract between the city and E. R. & W. Smith had no interest in the action and it was, in fact, instigated by one B. W. Marks, who later became associated with the Maloufs and Lawson in the enterprise. The

litigation was thereafter financed by the Maloufs and Lawson. In July, 1939, the Maloufs and Lawson formed a copartnership which later became the corporate defendants. In November, 1939, Ball, acting as an agent of the Maloufs and Lawson, purchased from Mr. DeMille, and held in his name for his principals, control of E. R. & W. Shortly thereafter Ball, representing that he was the owner of the majority shares, caused E. R. & W. to be reorganized with himself as president and a director and Lawson and one R. E. McGinnis, as additional directors. Ball also informed Sime that he would not recognize Sime's contract with E. R. & W. and told Sime he was discharged. On December 29, 1939, Ball obtained from the board of directors of E. R. & W. a resolution authorizing him to sell on or before 5 p. m., January 8, 1940, the corporation's interest in the Burbank project for $50,000 or more, and providing further that Ball should be paid a 5 per cent commission if a sale was consummated. On January 8th, Ball reported to the board that he had closed a sale with Zack J. Farmer whose cashier's check he held in the sum of $50,000. Unbeknown to Sime, Farmer was an agent of the Maloufs and Lawson in whose behalf he was making the purchase.

On January 12, 1940, Paul T. Sunday, who had acquired and owned a 50 per cent interest in the Burbank project together with E. R. & W. and Sime, commenced an action entitled *Sunday* v. *Edgerton, Riley & Walter, et al.,* to enjoin the sale on the ground that E. R. & W. had no right to sell without his consent. Sime, who had been named as a defendant in the Sunday action, filed a cross-complaint to enjoin the sale as being invalid as to his interest. Shortly after the filing of the cross-complaint Ball attempted to induce Sime to sell out his interest for $7,000 but Sime refused. This offer was later repeated and although Sime again refused he agreed to permit Sunday, who was trying to sell his own interest, to carry on negotiations in an effort to settle the entire matter. About February 13, 1940, Sunday told Sime that Farmer would pay $12,500 for Sime's interest in the payment and E. R. & W. would cancel Sime's indebtedness to it amounting to about $3,100. Sime accepted the offer. Pursuant to his agreement with Sunday, Sime and Travers and their respective wives executed a release of all claims against E. R. & W., Sunday and Ball; executed instruments of transfer; and Sime dismissed with prejudice his cross-complaint. Sunday and E. R. & W. executed an identical release in

favor of Sime and Travers. Sime and Travers received a joint check for $25,000, which they divided equally; and Sime's debt to E. R. & W. was duly cancelled. Although Sunday told Sime that the offer of a net price of about $15,600 for Sime's interest was not disproportionate to what he was receiving for his interest, it was shown that Sunday, in fact, received more than $100,000. The settlement was handled through an escrow but none of the escrow papers disclosed that the Smith litigation was controlled by the Maloufs and Lawson or that Ball was not the owner in his own right of the majority shares of E. R. & W. The Smith litigation, in which an appeal from an adverse judgment had been perfected by the plaintiffs therein, was voluntarily dismissed by them on June 17, 1940, after the aforesaid settlement had been consummated and Farmer had been put in possession of all of the assets of the Burbank project. Subsequently, certain of the minority stockholders of E. R. & W. filed an action entitled *Ben A. Walter, et al.* v. *Paul T. Sunday, et al.*, against the same defendants as in the present action, in which a judgment for fraud arising in part out of the same facts as are here involved was recovered in the amount of $225,000 on December 30, 1943. By stipulation, the judgment was subsequently vacated and a settlement reached. Shortly after this judgment was rendered Sime, who had not participated in the action, read the findings of fact therein and learned for the first time that the Maloufs and Lawson controlled the Smith litigation, Ball was their agent and had no personal interest in E. R. & W., Farmer also had acted as their agent in the purchase, and Sunday had received more than $100,000 in the settlement. The present action was commenced on February 3, 1944.

The foregoing statement summarizes the essential features of the complaint as incorporated by reference in findings made by the trial court after a trial covering some 140 trial days, the proceedings in which are presented to this court in the form of a 51 volume reporter's transcript of more than 16,000 pages. The court also made findings to the effect that the defendants conspired to fraudulently deceive plaintiff and acted in concert in acquiring plaintiff's interest in the project; defendants stood in a fiduciary relationship to plaintiff at the time they purchased his interest; plaintiff in 1937 became the owner of a 25 per cent (later reduced by agreement to a 22½ per cent) interest in the project as a joint adventurer with E. R. & W. and Sunday; plaintiff had no knowledge whatsoever, and no means of learning, prior to December 30, 1943, that defendants

Ball and Farmer were the agents of the Maloufs and Lawson or that the Smith litigation, which depreciated the marketability of the bonds, was under their control; the dismissal of Sime's cross-complaint and the execution of the release were procured as part of the conspiracy and fraud perpetrated by the defendants; and but for the fraud of the defendants, plaintiff and his coadventurers could have successfully liquidated the project at substantial profit to themselves. As part of its conclusions of law the trial court held that plaintiff was not barred by the statute of limitations or by laches, and that the dismissal of his cross-complaint in the Sunday action and the release which he had executed in connection therewith did not constitute res judicata or an estoppel. Further facts material to the disposition of the appeal appear in the discussion which follows.

Appellants have additional counsel on the appeal. They have presented one set of briefs which raise the following points: (1) The action is barred by the statute of limitations and laches; (2) it is barred by a voluntary dismissal with prejudice of Sime's cross-complaint in the action of *Sunday* v. *Edgerton, Riley & Walter, et al.*; (3) it is barred by a release executed by Sime; (4) the judgment based upon findings of fraud is without support in the evidence; (5) there was a defect of parties plaintiff in the failure to join Tad Travers, Kathleen Travers and Iona H. Sime as parties to the action; (6) it was error to render a money judgment against defendants as joint adventurers without terminating the joint adventure.

An additional set of briefs has been filed on behalf of appellant Ball by the attorney who represented the defendants in the trial. In his supplemental opening brief the following additional points are made: (1) That the written agreement relied upon by plaintiff as evidence of the joint adventure arrangement was not duly executed by Edgerton, Riley and Walter; (2) plaintiff was not and could not be defrauded; when he sold his interest in the venture he knew what it was worth.

It is in order to consider first the point raised in the supplemental briefs of Ball that the contract between plaintiff and E. R. & W. was not binding upon the latter because it had not been authorized or ratified by the corporation's board of directors. The written agreement bore the seal of the corporation, which was presumptive evidence of due exe-

cution. (Corp. Code, § 833; *Miners' Ditch Co.* v. *Zellerbach,* 37 Cal. 543, 597-599 [99 Am.Dec. 300].) It bore the signature of the president and secretary of the corporation. It was shown by various exhibits that it was the practice for Mr. Edgerton, as president, to execute contracts of employment. There was also evidence that the terms of the agreement were known to the directors, and were satisfactory to them. The parties operated extensively under it and the corporation received the benefit of Sime's services with full knowledge of its terms. The finding that the agreement was duly executed was made upon conflicting evidence and finds ample support in the record. (See *Security Bldg. & Loan Assn.* v. *Seibert,* 6 Cal.App.2d 54 [41 P.2d 556].) It is unnecessary to discuss the further finding that the agreement was ratified by the corporation on or about February 6, 1939. As we say, the findings that the agreement was duly executed and later ratified are attacked only in the supplemental briefs of appellant Ball. The contention is clearly without merit.

We shall consider next the contention that the transaction by which defendants acquired Sime's interest in the Burbank property was free of fraud. Upon this issue plaintiff relies heavily upon the finding that a fiduciary relationship existed between Sime and the defendants Ball, Malouf and Lawson throughout the questioned transaction. In the principal briefs of the appellants it is not seriously contended that such a fiduciary relationship did not arise out of the initial contract, although it is strenuously urged that if it ever existed it had been terminated before Sime disposed of his interest. In the supplemental briefs of appellant Ball it is insisted that no fiduciary relationship existed at any time, and it is argued also, in the alternative, that if it did exist in the beginning it had been destroyed before plaintiff sold his interest. It is conceded, of course, that if the status of defendants was that of fiduciaries, they were under a greater duty of disclosure than would otherwise rest upon them. The concealment of which they were found guilty was clearly such as the law does not tolerate in fiduciaries. (See *Meinhard* v. *Salmon,* 249 N.Y. 458 [164 N.E. 545, 62 A.L.R. 1]; 14 Cal.Jur. §§ 4, 7, pp. 763, 766.) It is unnecessary in this connection to elaborate upon the facts. The transaction, as established by the findings, may be summarized as follows: Defendants, joint adventurers with plaintiff in the purchase of bonds and the acquisition of real property through use of the bonds, acting in concert, maintained and controlled litigation to depress the market-

ability of the bonds; they concealed from plaintiff that they owned a controlling interest in the corporation which was a party to the joint venture with plaintiff; they produced a dummy purchaser through whom they proposed to acquire plaintiff's interest and the interest of the corporation in the project; they pretended they had made a sincere effort to find a purchaser for the corporation's interest and that the price offered by their agent was the best that could be obtained, and a fair price; they concealed the fact they were both buyers and sellers in the transaction, and they prevailed upon plaintiff to believe the sale in prospect was bona fide; plaintiff, realizing that the sale of the corporation's interest would necessarily terminate any further prosecution of the joint venture, and relying upon the good faith of Ball and Farmer, the agents of defendants, parted with his interest thus secretly acquired by defendants at a price far below its real value. There is no latitude for doubt that such conduct on the part of fiduciaries would render them guilty of actionable fraud and responsible in damages for the amount of plaintiff's loss. (*Cf.*, *MacIsaac* v. *Pozzo*, 81 Cal.App.2d 278 [183 P.2d 910].) Defendants quite understandingly endeavor to escape the responsibilities of fiduciaries rather than to justify their conduct.

It is contended in the supplemental brief of Ball that the parties were not engaged in a joint venture and, therefore, that no fiduciary relationship existed between them. It is said, "the essential elements of a joint venture are joint control and equal power to direct the enterprise," and that Sime did not have such control or power. Cited in support of the proposition are such cases as *Pope* v. *Halpern*, 193 Cal. 168 [223 P. 470] and *Bryant* v. *Pacific Electric Ry. Co.*, 174 Cal. 737 [164 P. 385]. In these and similar cases the requirement that there must be equality of control and authority in the undertaking to constitute the participants joint adventurers, was properly imposed where it was sought to impute to a rider in a vehicle contributory negligence of the driver. The cases are not at all in point here. The common definition of a joint adventure is, "a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation, or as an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge." (48 C.J.S., pp. 801, 802; see, also, *Nelson* v. *Abraham*, 29

Cal.2d 745, 749-750 [177 P.2d 931], and authorities there cited.) Although it is true that without special agreement one joint adventurer does not have authority to bind the others, and in this sense they have an equal right to control the management of the enterprise (cf., *Beck* v. *Cagle*, 46 Cal. App.2d 152 [115 P.2d 613]; *Larson* v. *Lewis-Simas-Jones Co.*, 29 Cal.App.2d 83 [84 P.2d 296]), they may by agreement grant authority to one or more of their number which would not be implied from the relationship alone. (*Cf., Eagle Star Ins. Co.* v. *Bean*, 9 Cir., 134 F.2d 755, 758; see, also, *Howell* v. *Oswald*, 96 Cal.App. 536 [274 P. 423], and *Menefee* v. *Oxnam*, 42 Cal.App. 81 [183 P. 379], holding joint venture existed although management was entrusted to one party only.) The contract, together with evidence as to the operations of the parties under it, manifestly provided a sufficient basis for the finding that plaintiff was a joint adventurer with E. R. & W. and Sunday.

■ It is also insisted that the defendants were merely stockholders of E. R. & W. and did not stand in a fiduciary relationship to Sime, even if the corporation did occupy that position. We cannot accord validity to this argument. Ball was president of the corporation and agent of the Maloufs and Lawson in the matter of the ownership of the controlling stock interest. The corporation was under fiduciary duties to Sime and could act only through its officers, directors and other agents. Only through them could it perform or violate its corporate duties. Since the Maloufs, Lawson, and Ball had control of the corporation, it was their duty to see that the corporation fulfilled its obligations as a joint adventurer. They were responsible for the corporation's breach of duty. Their wrongdoing was not as mere individuals, but as individuals who controlled the corporation. It was through their actions that the duties of the corporation were violated, and they were in fact the wrongdoers. It is idle to contend that stockholders and officers who exercise complete control over the affairs of a corporation may with impunity purposely cause the corporation to violate its duties as a fiduciary, or commit other frauds through the medium of the corporation. (See *Young* v. *Young Holdings Corp., Ltd.*, 27 Cal.App.2d 129, 146 [80 P.2d 723]; *Hillman* v. *Hillman Land Co.*, 81 Cal.App.2d 174, 183-184 [183 P.2d 730]; 6A Cal.Jur. § 22, pp. 75-79, and cases there cited.) It is clear that defendants were under the duties of fiduciaries in matters wherein they controlled and directed the corporation as a joint adventurer.

Appellants all make the further claim that even if a fiduciary relationship had existed, it had been terminated before Sime disposed of his interest to Farmer. They base their argument upon a letter written to Sime by R. A. Treacy, on January 28, 1939, stating that the agreement dated November 18, 1937, had not been authorized by the directors, or executed with authority, and would not be recognized by the corporation; upon evidence that Ball notified Sime, in the first week of December, 1939, that the contract was invalid, denied that Sime had any interest in the bonds or properties, claimed they were solely the property of E. R. & W., and ordered Sime to vacate the desk space he occupied in the office; also upon testimony that relations between Sime and Ball were thereafter strained, and the corporation disputed the rights claimed by Sime under the contract. It is also pointed out that Sime alleged in his cross-complaint that there was dissension and discord in his relations with his associates which was defeating the purposes of the venture. Although the court found the facts as related, it also found that the fiduciary relationship continued through the time when Sime disposed of his interest, or, in other words, that the attempted repudiation of the contract by Ball on behalf of the corporation, and the resulting circumstances, did not have the effect of terminating the relationship. This finding, in our opinion, has substantial support in the evidence.

As a matter of law joint adventurers are fiduciaries. (*MacIsaac* v. *Pozzo,* 26 Cal.2d 809, 813 [161 P.2d 449] and cases there cited; 14 Cal.Jur. § 4, p. 763.) It appears to be contended by appellant Ball that the strained relations between Sime and himself had the effect of terminating the joint venture and, perforce, any existing fiduciary relationship. The contention is not sustainable. The fact that persons engaged in a joint venture may quarrel or be at odds over the business in which they are associated, or may even be involved in litigation with one another, does not as a matter of law relieve them of their fiduciary duties. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 434 [159 P.2d 958]; *Wright* v. *Duke,* 91 Hun. 409 [36 N.Y.S. 853, 859]; *Olivier* v. *Uleberg,* 74 N.D. 453 [23 N.W.2d 39, 165 A.L.R. 974]; 40 Am.Jur. § 130, p. 219. See, also, *Ramos* v. *Pacheco,* 64 Cal. App.2d 304, 309 [148 P.2d 704].) Although such dissension may provide a sufficient ground for dissolution of the

venture by a decree of a court of equity (anno., 118 A.L.R. 1421; 30 Am.Jur. § 49, p. 703; 48 C.J.S. § 4, pp. 822-823), it is well settled that in the absence of such a decree, an agreement fixing the time of termination, or a voluntary abandonment of the enterprise by one of the parties, the agreement remains in force until its purpose has been accomplished or has become impossible of fulfillment; and while it is in force, ordinarily one joint adventurer has no right to exclude another, or to withdraw himself from the arrangement, in order to act independently in respect to the subject matter. (*San Francisco Iron etc. Co.* v. *American Milling etc. Co.*, 115 Cal.App. 238, 248 [1 P.2d 1008], and cases there cited; see, also, *Zeibak* v. *Nasser*, 12 Cal.2d 1, 12-13 [82 P.2d 375]; *In re Gotfried* (D.C. Cal.), 45 F.Supp. 939; 30 Am.Jur. § 44, p. 701.) The successful consummation of a fraud would be a relatively simple matter if the mere negation of the agreement, or the provocation of strained relations, were sufficient to exempt one joint adventurer from his duty of highest good faith to his associates. (See *Johnson* v. *Peckham*, 132 Tex. 148 [120 S.W.2d 786, 120 A.L.R. 720].) Appellants have referred us to no evidence which would have required the court to find that the joint venture had been terminated prior to the sale. Upon the contrary the answer of Ball in the action of *Sunday* v. *Edgerton, Riley & Walter*, to be referred to hereafter, admitted the contract relationship, as set forth in the first two paragraphs of the joint venture agreement although it denied the validity of the remainder. For these reasons, and also because of circumstances to which we shall presently refer, the finding that a fiduciary relationship existed at the time of the questioned sale has sufficient support in the evidence.

Compliance with fiduciary duties is exacted as a matter of law from parties to various technical relationships, such as partnerships and joint ventures. But entirely apart from such instances, a fiduciary status may exist as a matter of fact where it would not otherwise be inferred from the mere relationship of the parties. (*Bank of America* v. *Sanchez*, 3 Cal.App.2d 238, 243 [38 P.2d 787]; 36 C.J.S. 743.) One who voluntarily assumes a position of trust and confidence is a fiduciary, and he remains a fiduciary as long as trust and confidence are reposed in him. (Civ. Code, § 2219; see, also, *Robbins* v. *Law*, 48 Cal.App. 555, 561 [192 P. 118].) This status may, of course, continue in fact in the case of partners or joint adventurers after the dissolution of their association,

although dissolution would normally end the fiduciary status imported by law as an incident of the association. Thus, even if it should be assumed, arguendo, that the joint venture was at an end before the assets were sold, it would not necessarily follow that the fiduciary relationship also had been terminated. The extended arguments of appellants are to the effect that the court was obliged to find, on the evidence, that Sime did not repose trust and confidence in Ball, and that it would follow that there was no fiduciary status. We see no reason to question the implied finding that Sime did repose trust and confidence in Ball. He testified that he actually believed Ball's representation that he was the owner of the controlling interest in E. R. & W. He trusted in his honesty and veracity at least to that extent, and it is evident from the fact that he joined in the sale that he believed the representations of Ball that under the existing conditions $50,000 was a fair price for the E. R. & W. interest. True, he had initially objected to the price and insisted that the bonds were worth far more, but the best evidence that he finally agreed with Ball as to the advisability of making the sale is that he sold his own interest at a comparable price. It was a question of fact for the trial court whether a disruption of the friendly relations between Sime and Ball had the effect of destroying Sime's confidence in Ball with relation to the particular matter of Sime's disposition of his interest. Appellants would have us reverse the trial court's finding upon these questions of fact. Manifestly this cannot be done. The evidence did not establish that the fiduciary relationship had ceased to exist as a matter of law, and there was substantial evidence that it did, in fact, exist, as the court found. (*Cf., Hobart* v. *Hobart Estate Co., supra.*)

There can be no doubt that, irrespective of any fiduciary relationship, the conduct of the defendants constituted actionable fraud. The intentional and systematic concealment by the defendants of highly material facts, which were peculiarly within their knowledge and which Sime did not suspect and could not have discovered, was fraudulent. (See *Herzog* v. *Capital Co.,* 27 Cal.2d 349, 353 [164 P.2d 8], and authorities there cited; 37 C.J.S. § 16, pp. 245, 246; 23 Am.Jur. § 80, p. 857.) This was not a mere attempt, as a matter of good business, to prevent Sime from inflating his price above a reasonable figure through nondisclosure of prospects and plans for future promotion of the venture by the purchasers. (*Cf.,*

*Hays* v. *Meyers,* 139 Ky. 440 [107 S.W. 287, 288, 139 Am.St. Rep. 493, 17 L.R.A.N.S. 284].) Moreover, there was more here than mere silence as to information equally within the reach of both parties. The defendants not only had exclusive knowledge of the material facts, but knew that Sime was acting under a misapprehension, which they had cultivated, that the Smith suit and the sale to Farmer by E. R. & W. were bona fide. "The gist of the action is fraudulently producing a false impression upon the mind of the other party; and, if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff." (*Stewart* v. *Wyoming Cattle Rancho Co.,* 128 U.S. 383 [9 S.Ct. 101, 32 L.Ed. 439, 441].) It is significant that the Maloufs and Lawson concealed their identity by proceeding entirely through agents acting ostensibly in their own behalf. Although normally it would not be permissible to derive any inference of fraudulent intent from the fact, standing alone, that one sells or purchases property secretly through an agent, such an inference may be warranted by special accompanying circumstances. (See *Strong* v. *Repide,* 213 U.S. 419 [29 S.Ct. 521, 53 L.Ed. 853]; *Traer* v. *Clews,* 115 U.S. 528 [6 S.Ct. 155, 29 L.Ed. 467]; *Beard* v. *Campbell,* 2 A.K. March (Ky.) 125 [12 Am.Dec. 362].) Here the secret employment of Ball and Farmer as seller and purchaser, respectively, of E. R. & W.'s interest, was the very essence of the fraud; for, had the defendants acted openly, the purported sale would have been clearly revealed to be a mere sham and the price of $50,000 an arbitrary figure set by defendants instead of the highest price obtainable on the open market. Similarly, concealment of their identity as the financial supporters of the Smith litigation was a major, and clearly fraudulent, feature of the conspiracy. The contract between E. R. & W. and the city of Burbank which provided the means by which the defaulted bonds were to be converted into real property, was one of the most valuable assets of the project. The Smith litigation cast doubt upon the enforceability of the contract, and thereby had the calculated effect of depressing the marketability of the joint venture assets by making ultimate success questionable.

Proof that Ball repeatedly, and with knowledge of the untruthfulness of his statements, represented to Sime that he was the owner of a controlling interest in E. R. & W., that Farmer was a bona fide purchaser, and that the sale was a

good one for a fair price, constitutes in itself a sufficient showing of fraudulent conduct. Insofar as it might be claimed that the last mentioned statement was a mere opinion rather than a representation of fact, that issue has been resolved in favor of plaintiff by the trier of fact. (See *Willson* v. *Municipal Bond Co.*, 7 Cal.2d 144, 151 [59 P.2d 974] ; *Pullen* v. *Heyman Bros.*, 71 Cal.App.2d 444 [162 P.2d 961].) ▆ In any event, an intentionally false affirmation of opinion or belief, being a misrepresentation of the state of mind of the speaker (*Barron Estate Co.* v. *Woodruff Co.*, 163 Cal. 561, 573 [126 P. 351, 42 L.R.A.N.S. 125]), is actionable where, as in the present case, the one making it has superior knowledge or special information concerning the subject matter of the representation. (*Union F. M.* v. *Southern Cal. F. M.*, 10 Cal.2d 671, 676 [76 P.2d 503], and cases there cited; *People* v. *Gordon*, 71 Cal.App.2d 606, 625-626 [163 P.2d 110] ; 37 C.J.S. § 10, p. 230.) ▆ Ball's statements were actionable also for the further reason that having undertaken to advise Sime concerning the sale, he was charged in law with the duty to make a full and fair disclosure of all the material facts within his knowledge. (*Rogers* v. *Warden,* 20 Cal.2d 286, 289 [125 P.2d 7] ; *American T. Co.* v. *California etc. Ins. Co.,* 15 Cal.2d 42, 65 [98 P.2d 497].)

▆ Defendants challenge the sufficiency of the evidence to justify the findings upon the defense of the statute of limitations. The limiting statute which applies in a fraud action is section 338, subdivision 4, Code of Civil Procedure, namely, three years after the discovery of the fraud. Section 19 of the Civil Code is to be read with section 338, subdivision 4, and reads: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." Plaintiff's complaint herein was filed on February 3, 1944.

It is asserted and argued at length "that this record demonstrates that Sime knew every essential fact of his present alleged cause of action more than three years before it was commenced." On this point it is said, "the evidence is solely, overwhelmingly, solidly and indisputably one way." The court made the following finding: "The court finds that the plaintiff did not learn of the fraudulent conduct of the defendants and of the conspiracy as alleged in the complaint herein, and all as found by the court herein, until after December 30,

1943, upon which date certain findings of fact and conclusions of law, and a judgment in the sum of $225,000.00, were filed against the defendants in a certain cause entitled *Ben A. Walter, et al.*, plaintiffs, vs. *Paul T. Sunday, et al.*, defendants, the same being cause number 479908 of this court and the said defendants therein being identical with the defendants in the within action.'' It was further found that until after December 30, 1943, plaintiff had no knowledge whatsoever of the business transactions of defendants Ball and Lawson with defendants Malouf, and the corporate defendants, or that any of the defendants had under their control the lawsuit of *W. E. Smith* v. *City of Burbank, et al.* There was a conclusion of law that the action was not barred by the statute of limitations, and there were findings to the effect that the acts and conduct of the defendants constituting the alleged fraud were knowingly concealed by the defendants and were not available to plaintiff ''except through a disclosure made by some witness sworn to tell the truth,'' and that plaintiff first learned of the same through the findings of December 30, 1943, in the action of *Walter, et al.* v. *Sunday, et al.* It was effectually found that plaintiff did not, prior to that time, have knowledge sufficient to put him on inquiry as a prudent man, as to the existence of the facts constituting the fraud. It was also effectually found that by prosecuting an inquiry plaintiff would not have learned such facts. The question as to the statute of limitations is whether these findings are supported by substantial evidence.

Defendants rely chiefly upon certain allegations of plaintiff in his cross-complaint in the action of *Sunday* v. *Edgerton, Riley & Walter, et al.* The complaint in that action was filed January 10, 1940; Sime was made a defendant and he filed his cross-complaint January 17, 1940. It is contended that he pleaded practically the identical cause of action which is pleaded in his complaint in the present action. It is pointed out that there is great similarity in the two pleadings. Each of them gives a history of the transactions between the parties to the time of the filing of Sime's cross-complaint. Paragraph XIV of the cross-complaint reads as follows: ''This cross-complainant is informed and believes, and upon such information and belief alleges the fact to be that said alleged sale of said bonds to Zack Farmer was but a pretended sale, and not a sale in fact, and if made at all, which this cross-complainant says it was not, it was made in furtherance of a scheme and design by parties unknown to this cross-complainant, to the

end that such unknown persons might acquire the interest of this cross-complainant for themselves and thus, for a nominal consideration to this cross-complainant, to terminate all his right, title, and interest in said bonds. This cross-complainant is informed and believes, and upon such information and belief alleges the fact to be that his one-half interest in said bonds is reasonably worth in excess of the par value of said bonds, that all matters affecting the realization of the returns to be had by the use of said bonds have been done, that aside from two lawsuits now pending on appeal, and in which lawsuits the judgment is in favor of these several joint adventurers, the road is cleared for an immediate realization of the purposes of said venture, that it only remains now to sell the properties whereby a liquidation of said bonds may be had, that there are now available, for the purpose of such liquidation, in excess of 470 unimproved parcels of land that are reasonably worth in excess of $450,000., that said purported sale hereinbefore referred to is a plan and scheme fostered and put into effect by the controlling interests in the cross-defendant Edgerton, Riley and Walter corporation, Zack Farmer, and other persons unknown to this cross-complainant, to now reap the profits of this venture for themselves to the exclusion of the interest and right of this cross-complainant.'' In substance, the relief sought by the cross-complaint was that E. R. & W., Zack Farmer, and all persons acting in conjunction with them, be restrained from selling the bonds or other properties of the joint venture and from selling or otherwise dealing in one-half of the bonds and property claimed by Sime to be his property. There were prayers for incidental relief. It is contended by defendants that these allegations, made upon information and belief, show conclusively that plaintiff had knowledge, actual or constructive, of the facts which he claims were concealed from him and upon which the court based its findings and conclusions of fraud.

There was no evidence that, prior to December 30, 1943, plaintiff had any knowledge that the defendants were controlling the Smith suit or that any of them had any interest in the purchase, or that the Maloufs were the owners of the stock of E. R. & W., which stood in the name of Ball. Upon the contrary, plaintiff testified that he had no such knowledge. He testified that the phrase, ''pretended sale,'' as used in his cross-complaint, merely referred to his contention that in selling its interest in the project, E. R. & W. was attempting

to sell, without Sime's consent, assets in which Sime also claimed to have an interest as joint adventurer; and that that was what his cross-complaint was about. The finding that plaintiff had no knowledge of the facts constituting the fraud at the time of the sale was in accord with his testimony and we cannot agree that it is unsupported.

As to the claim of constructive knowledge, the issue was whether plaintiff had notice of facts sufficient to put a prudent man upon inquiry and if so, whether an inquiry, reasonably conducted, would have disclosed to him the true state of affairs. This question, of course, was one of fact for the trial court. (*Northwestern P. C. Co.* v. *Atlantic P. C. Co.*, 174 Cal. 308, 312 [163 P. 47]; *Taylor* v. *Wright*, 69 Cal. App.2d 371, 384 [159 P.2d 980].) · The finding that plaintiff had no such notice, if based upon conflicting evidence or reasonable inferences from the evidence, may not be disturbed by this court. The burden was upon the defendants to lay before us all the evidence which has a material bearing upon their claim that there was no substantial evidence to support the finding. They have done so at some length. Our attention is called to the following facts: There was evidence that in April or May, 1940, plaintiff was introduced to one of the defendants Malouf by Farmer as one of Farmer's associates. He knew that Ben Mar Hills Corporation was interested in the Burbank project and that the Maloufs and Farmer were connected with the corporation. He had this knowledge in the spring of 1940. In January, 1941, he knew that Ben Mar Hills Corporation had acquired through Farmer all the interest of Sunday in the project. On January 28, 1941, Ben Mar Hills Corporation wrote a letter to Sime, in which it was stated that the corporation had made "the deal with Edgerton, Riley & Walter and Paul T. Sunday" in order to eliminate the opposition of Sime and Travers. Sime received this letter through the mail. In March, 1941, Sime and his associate Travers, sold to Ben Mar Hills Corporation the bonds they had acquired subsequent to February 20, 1940. The agreement of sale which memorialized negotiations taking place in January, 1941, recited that Farmer had acquired for Ben Mar Hills Corporation the interests of E. R. & W. and Sunday in the Burbank project. It was alleged on information and belief in Sunday's complaint, filed January 10, 1940, that Farmer was not acting as a principal in the contemplated sale but as the agent of a principal, whose identity was unknown to Sun-

day. This allegation was admitted in the answer of Sime. The answer of E. R. & W. admitted that Farmer was not a principal, and alleged that the identity of the principal was known to Sunday although no one was named as such. With reference to these facts, to plaintiff's testimony, and the allegations of the pleadings the brief of appellants states "the foregoing shows that more than four years before the present action was commenced plaintiff Sime had knowledge of every element of the present case except possibly that he did not know the actual names of the 'unknown persons' to whom he referred in his cross-complaint." It is said "in the light of this knowledge acquired by Sime during 1940 no one except the Maloufs could possibly have been the unknown persons referred to in the Sime cross-complaint." It appears to be contended that Sime should have made all possible deductions from the later association of the Maloufs and Farmer, and therefore was to be charged with notice that the Maloufs and Lawson were the owners of the stock which stood in the name of Ball. It is difficult to see how the disclosure to plaintiff in the spring of 1940 that the Maloufs were interested with Farmer in the ownership of the bonds would have made clear that Farmer had acted as their agent in the purchase of the bonds or tended in any degree to connect them with the ownership of stock in E. R. & W. The argument leads back to the allegations of Sime's cross-complaint. He had alleged on information and belief that the sale to Farmer was in reality a sale to the controlling interests in E. R. & W. and other persons unknown to him. While this, of course, was an admission that he had some information and belief on the subject, the critical issue in the present action was whether he had such information, and if so, the nature and extent of it. He testified at the trial that he had no information to that effect, although he suspected that some scheme was on foot which would operate to his disadvantage. He did not know, or even suspect, that Ball was not the owner of the controlling interest in E. R. & W. or that the Maloufs or Lawson had any interest therein. Upon the contrary, he alleged in his cross-complaint in the Sunday action that Ball was the owner of the stock that stood in his name. Ball made an affidavit which was filed in the same action that he was the owner of the stock, and Sime testified that he believed it to be a fact until he discovered to the contrary in December, 1943. Ball also stated in his affidavit that Farmer was a bona fide purchaser and was financially able to carry out the proposed purchase.

The cross-complaint may reasonably be construed as alleging on information and belief that Ball and other persons unknown to Sime were using Farmer as a dummy through whom they proposed to acquire the E. R. & W. interest and Sime's interest. So construed it was clearly contradictory of his testimony that he had no information whatsoever that any of the stockholders of E. R. & W. were in league with Farmer. If he had been in possession of information which indicated that Farmer was acting for the majority stockholders, common prudence would have required that he make diligent inquiry into the facts. But there was ample evidence at the trial that he did not have knowledge or information to support the allegation until he read the findings in *Walter* v. *Sunday, et al.*, as the court found.

The court found that the Maloufs and Lawson conspired with Ball to acquire Sime's interest for themselves for as little as possible, and that they artfully concealed all the facts which would have given indication of the existence of the conspiracy. The argument of defendants on the point of notice is but slightly more than a claim that the allegations of plaintiff's cross-complaint, based upon information and belief, were conclusive upon that question. It was for the trial court to weigh Sime's testimony against any conflicting admissions or declarations he had made, and it was not unreasonable to conclude that the allegations of the cross-complaint were founded on mere suspicion that Farmer was perhaps acting as agent of the owners of the controlling interest in E. R. & W. ██ The rule of constructive notice demands that " '. . . There must appear in the nature of the case such a connection between the facts discovered and the further facts to be discovered that the former may be said to furnish a reasonable and natural clue to the latter. Circumstances that are dubious or equivocal are not sufficient to take the place of actual notice. . . . The rule imputes notice only of those facts that are naturally and reasonably connected with the fact known, and of which the known fact or facts can be said to furnish a clue. It does not impute notice of every conceivable fact and circumstance however remote which might come to light by exhausting all possible means of knowledge.' " (*West* v. *Great Western Power Co.*, 36 Cal.App.2d 403, 407 [97 P.2d 1014] [quoting from 46 C.J. 546, 547]. See, also, *Victor Oil Co.* v. *Drum*, 184 Cal. 226, 240-241 [193 P. 243].) The circumstances must be such that further inquiry is not merely suggested, but becomes an imperative duty, and failure to make it constitutes

a negligent omission. (*Zeller* v. *Milligan,* 71 Cal.App. 617, 623-624 [236 P. 349]; *Tarke* v. *Bingham,* 123 Cal. 163, 166 [55 P. 759]; *Twining* v. *Thompson,* 68 Cal.App.2d 104, 112-113 [156 P.2d 29]; *Hobart* v. *Hobart Estate Co., supra,* 26 Cal.2d 412, 438 and cases there cited.) The decision on the issue of notice was one of fact. ▉ It cannot be held, as a matter of law, that the facts known to Sime prior to February 3, 1941, were sufficient to put him on inquiry. The findings to the effect that he had no such knowledge or notice are supported by substantial evidence, and with that determination the question ceases to be one of law.

Defendants cannot prevail on the point of discovery unless the record shows, as a matter of law, that avenues of inquiry were open to Sime, which, if explored, would have resulted in discovery of the fraud. ▉ In order that one who claims to have been defrauded be charged with constructive knowledge of the facts constituting the fraud, it must appear not only that he had notice of facts sufficient to put a prudent person upon inquiry, but also that means for the discovery of the facts were available to him. (*Hobart* v. *Hobart Estate Co., supra,* 26 Cal.2d at p. 435; *West* v. *Great Western Power Co., supra,* 36 Cal.App.2d 403, 407; *Adams* v. *Harrison,* 34 Cal. App.2d 288, 299 [93 P.2d 237].) ▉ It is argued by defendants that inquiry made of some of the defendants would have developed the facts constituting the conspiracy, and that if plaintiff had taken depositions in the action of Sunday against E. R. & W. he would thus have uncovered the facts. A sufficient answer is that the trial court did not believe the means of discovery were available to plaintiff in a practical sense. We have no hesitation in agreeing with this view. Plaintiff could not fairly have been charged with notice of facts which he could have learned only out of the mouths of the conspirators, who were successfully endeavoring to conceal them. (*Adams* v. *Harrison, supra,* 34 Cal.App.2d 288, 299; see, also, *Kimball* v. *Pacific Gas & Elec. Co.,* 220 Cal. 203 [30 P.2d 39]; *Kane* v. *Cook,* 8 Cal. 449; *Marshall* v. *Buchanan,* 35 Cal. 264 [95 Am.Dec. 95].) It was a question of fact whether means were available to plaintiff for the discovery of the frauds and the finding on that issue was a reasonable deduction from the evidence.

▉ Another answer is that there was substantial evidence that Sime was dissuaded from pursuing the investigation and prosecuting his cross-complaint by the very frauds which

the defendants claim he should have uncovered. Sime testified that both before and after he filed his cross-complaint Ball made positive representations to him that he, Ball, was the owner of the controlling interest in E. R. & W., that he did not regard the bonds as a good investment for E. R. & W., and that he considered $50,000 to be a fair price for the company's interest. He testified that he believed these representations and relied upon them in parting with his own interest. Even if it should be conceded that he suspected the facts to be other than as represented by Ball, his testimony was to the effect that these suspicions were allayed by the positive representations of the latter, and this testimony, if believed by the court, would have furnished a sufficient excuse for Sime's failure to make further investigation. It is well settled that one who has acted in a manner which would reasonably induce another to forego or discontinue an investigation of his fraudulent acts will not be heard to say that the facts would have been developed had inquiry been made. (*Kalkruth* v. *Resort Properties, Ltd.*, 57 Cal.App.2d 146, 150 [134 P.2d 513], and cases there cited; *Dow* v. *Swain*, 125 Cal. 674, 683 [58 P. 271].)

It appears from the foregoing that the trial court's conclusion that the action was not barred by the statute of limitations rests upon findings that have ample support in the evidence, both direct and circumstantial. In fact, plaintiff's contention that he discovered the fraud of defendants within the three-year period immediately preceding the commencement of his action was quite firmly established.

■ Defendants urge that the action was barred by releases executed by plaintiff. Reliance is placed chiefly upon the release of February 14, 1940, executed by plaintiff and his wife, and Tad Travers and his wife, in favor of E. R. & W., Paul T. Sunday and B. L. Ball. Brief reference is also made to a provision of a contract between Sime and Ben Mar Hills Corporation, executed subsequent to the sale, and purporting to deprive Sime of "the right to participate further in any deals, negotiations, transfers, suits" concerning the property in question. This agreement, upon its face, is wholly insufficient to bar the present action, and need not be discussed further. The former instrument, on the other hand, was a general release of all claims, causes of atcions, etc., and also a release of "any claim or claims arising out of or connected with the so-called Ben Mar Hills joint venture involving certain City of Burbank Bonds, etc." It was executed as a part of

the transaction in which defendants acquired plaintiff's interest in the project. On January 8, 1944, plaintiff made written demand upon defendants that he be restored to his right as a joint venturer. He offered to do equity, but made no offer to restore the consideration he had received in the sale. The court found that he was not required to do more in order to maintain his action. Defendants say, "the rule in our opinion is without conflict in this state that a release of a claim for unliquidated damages is an absolute bar to the prosecution of such a claim unless there has first been a rescission of the release and return of the consideration received therefor," and further, "it is only where the action is not on a disputed claim—that is, one which is undisputed in amount—that a party may retain the consideration paid for a release and sue for sums in excess thereof." Plaintiff replies that the release may not be construed as applying to his present claim for damages for the reason that at the time it was given he was asserting no claim against defendants, had no knowledge that he was being defrauded, and consequently had no intention to release a claim that arose out of the transaction in which the release was given. For various other reasons he denies that he was required to rescind.

We shall consider first the scope of the release. It was prepared by defendants and is to be construed most strongly against them. In our opinion, it did not embrace the claim which is the subject of the present suit. In the first place, the claim did not arise out of the joint venture and was not connected therewith. It came into existence only upon the completion of the purchase by defendants which was a wholly separate transaction. The release related to claims having origin in the joint venture relationship. Since this was terminated through the sale, the release should be understood as terminating also any existing claims of Sime as a joint adventurer such as the right to an accounting and claims of that nature. The release was special as to such claims, and it was clearly the intention of the parties to waive enforcement of any rights arising out of the joint venture that may have existed at the time. That such was their intention is demonstrated by the fact that a release in identical terms was executed by E. R. & W. and Sunday in favor of Sime. The parties in this manner agreed there would be no aftermath of that enterprise. In the second place, it would have required a special reference to the sale transaction to bring it within the

terms of the release. There was no such reference. While the release was in general terms, and was also specific as to claims arising out of or connected with the joint venture, it was not specific in any other respect, and it is to be construed in the present connection as a general release. So construed it would not embrace claims unknown to Sime, and which he did not intend to release. (Civ. Code, § 1542.) The evidence is clear to the effect that Sime had no intention of releasing any claim for damages in case it might develop that he was being defrauded in the sale. In the third place, if the release be deemed ambiguous as to the intention of the parties respecting the possible coverage of plaintiff's claim for damages, the court could properly have considered any testimony of the parties bearing upon their intentions and understandings. It would scarcely lie in the mouths of the defendants to say that they understood or intended that the release would shield them from the consequences of fraud in the purchase transaction. ▉ If it was their intention to obtain a release from the consequences of the very frauds they were committing, of which Sime was ignorant, and if they incorporated in it language designed to accomplish that purpose, this in itself, would have constituted a fraud upon plaintiff, rendering the release void and rescission unnecessary. (See *Garcia* v. *California Truck Co.*, 183 Cal. 767, 770 [192 P. 708], discussing *Meyer* v. *Haas*, 126 Cal. 560 [58 P. 1042].) We do not, however, take this view of the case. As we have said, the mutual releases were in proper form to close the joint venture and they served no further purpose.

▉ If we were to assume, arguendo, that the instrument executed by plaintiff did constitute a release of the present cause of action for fraud, it would nevertheless follow that a restoration to defendants of the $15,600 received by plaintiff was not necessary to an effective rescission of the release as a prerequisite to the action. *Taylor* v. *Hopper*, 207 Cal. 102 [276 P. 990], *Garcia* v. *California Truck Co.*, 183 Cal. 767 [192 P. 708], *Westerfeld* v. *New York Life Ins. Co.*, 129 Cal. 68 [58 P. 92, 61 P. 667], and *Winstanley* v. *Ackerman*, 110 Cal.App. 641 [294 P. 449], upon which appellants rely, treat of fraudulently procured releases of claims which, both before and after the execution of the release, were disputed as to right and as to amount. The Taylor and Garcia cases were personal injury cases; Westerfeld was suing upon an insurance policy which the defendant claimed had lapsed; and Winstanley was a wrongful death action. In such cases it is clear that the

plaintiff must restore what he has received in settlement of the disputed claim before suing upon it. He cannot retain the benefits of the release and sue, for to sue would violate the terms of his bargain. To hold otherwise would frustrate the very purpose of the release and destroy its effectiveness as a favored device for eliminating litigation. Hence rescission is necessary; and may be effectively accomplished only by returning the entire consideration received, for if plaintiff should fail to establish his cause of action, he would not be entitled to retain anything. The rule in such circumstances appears to be well settled. Equally well established, however, is the exception to the rule: A restoration is not necessary, in order to avoid the bar of a release, where there is no question as to the right of the plaintiff, arising independently of the release itself, to retain what he received. (*Campbell* v. *Birch*, 19 Cal.2d 778 [122 P.2d 902]; *Walsh* v. *Majors*, 4 Cal.2d 384 [49 P.2d 598]; *Kales* v. *Houghton*, 190 Cal. 294 [212 P. 21]; *Matteson* v. *Wagoner*, 147 Cal. 739 [82 P. 436]; *Richards* v. *Fraser*, 122 Cal. 456 [55 P. 246]; *Gilson Q. M. Co.* v. *Gilson*, 47 Cal. 597. ▮▮ The law does not require, as the price of attack upon a fraudulently induced release, sacrifice of independent rights, or the doing of idle acts. (See *De Garmo* v. *Petitfils Confiserie*, 93 Cal.App. 261, 275 [269 P. 692].) General language in some of the cases intimating that the exception is applicable only where the liability sued upon is undisputed both as to existence and as to amount, is shown by the holdings in the Walsh, Kales, and Richards cases to be inaccurate, unless restricted to the particular facts before the court. In these cases, the amount of the defendant's ultimate liability was in dispute, but it was nevertheless shown clearly that the plaintiff would in any event be entitled to retain what he had previously received, whether he prevailed or not in the action. ▮▮ The facts of the case at bar show it to be governed by the exception to, rather than the rule of restoration. If plaintiff established his claim, the $15,600 already received would be deducted from the total amount found to be due (as it was by the court below); if, however, he failed to prove the alleged fraud, he would be entitled to retain the $15,600 as the contract consideration for the transfer to defendants of his interest since they stood upon the purchase and retained the property.

▮▮ Even if it be conceded, arguendo, that one of the circumstances moving the defendants to pay the money was that a release would be executed there is no basis for a conten-

tion that any part of the $15,600 was paid for a release of the claim now in suit or that there was any consideration other than the mutual releases. There would have been, in fact, nothing to restore to the defendants upon the cancellation of the release unless Sime had also desired to rescind the sale. He did not attempt to do this, nor was he required to, in order that he might be free to sue for damages. Rescission and restoration are required only under equitable principles and to prevent the taking of unfair advantage. Restoration is not required unless the ends of justice require it. The argument of defendants would lead to this result: Sime, although affirming the sale transaction, would have been required to give notice of rescission of the release and restore the $15,600 which he had received from the defendants while the latter kept his property. This would truly be an innovation of substantive right and procedure. As the case of *Montes* v. *Peck*, 112 Cal. App. 333 [296 P. 624], illustrates, the rules respecting rescission relied upon by defendants have no application to such a situation. In that case, having discovered that the rentals under certain leases of real property being purchased were less than represented, the purchasers, in reliance upon the seller's fraudulent reassurances as to the rental income under the remaining leases, and in return for a substantial reduction in the price, released the seller from any further claim should it develop that the income was less than represented, and closed the sale. In holding that rescission and restoration of the consideration were not necessary before suing upon the fraud in respect to the remaining leases, the court treated as controlling the fact that the sale and release were but one transaction, permeated throughout by the same fraud. Noting that rescission of the release alone, as a part of an entire transaction, and restoration of the consideration, would work an injustice upon plaintiffs the court held that they were entitled to stand on their contract and sue for damages without either a restoration or offer thereof, saying: "Having chosen this remedy to which they are entitled, we think the purported release, which was a part of the entire contract, may not be segregated from the rest of the agreement, nor may the respondents be required to rescind as to that portion of the agreement, while permitted to sue for damages on the other part." (112 Cal.App. at p. 341.) This holding, in our opinion, is squarely applicable here.

We hold that no restoration of the consideration received by Sime, or any part of it, was required, for the reason that

the release did not cover the claim in suit; for the further reason that it appears that Sime received no consideration for his release other than the releases received from E. R. & W. and Sunday in his favor; and for the additional reason that restoration of the consideration paid for the property was not required through any considerations of equity or justice, so long as Sime affirmed the contract, allowed defendants to keep his property, and sought only the recovery of damages.

The briefs discuss at length the question whether the dismissal of Sime's cross-complaint in the Sunday suit operated as a retraxit and amounted to an adjudication that Ball, and therefore the Maloufs and Lawson, as joint tort feasors, had not been guilty of fraud in the sale transaction. Much that has been said with relation to the effect of the release applies to the contention of defendants that the dismissal of the cross-complaint operates as a bar to the present action. Either one would have been sufficient to accomplish the purposes of the parties. We deem it unnecessary to decide questions discussed in the briefs as to the effect that should have been given to the dismissal if it had been shown to be a voluntary abandonment of plaintiff's claims. A conclusive answer to the claim of res adjudicata is that the dismissal was obtained fraudulently. Its validity was directly attacked in the present action upon the ground of fraud; and the issue was tried and resolved in plaintiff's favor. It was vitiated by the judgment in the present action and became a nullity as an adjudication or abandonment of any of Sime's rights that may have been in issue in the Sunday action.

Defendants, quite properly, do not question the power of the court to make a complete determination of the entire controversy which arose out of the fraudulent conspiracy. Plaintiff clearly had a right to attack the release and the dismissal for fraud and, if successful, to be awarded full relief upon his cause of action, against which the release and dismissal were asserted. (*Young* v. *Young Holdings Corp., Ltd.*, 27 Cal. App.2d 129 [80 P.2d 723]; *Raynor* v. *Mintzer*, 67 Cal. 159 [7 P. 431]; 1 Cal. Jur. §§ 33 to 39 incl., pp. 348-359.) The dismissal did not bar the present action.

It was sought by the complaint to recover damages also from Sunday. It was alleged that Sime entrusted the settlement of his rights to Sunday, that Sunday represented to him that $15,000, or thereabouts, would not be disproportionate to the amount offered to Sunday for the sale of his

interest, plaintiff believed the representations of Sunday, acted upon the same, and joined in the sale. The court found that Sunday had joined with defendants in the conspiracy and was to receive the sum of $150,000 for furnishing them a transfer of his interest and the interest of Sime. Upon motion for a new trial, the court made an additional finding that Sunday acted throughout without knowledge of the fraud of defendants. It is argued by the defendants that Sime acted independently in selling his interest, sold the same through Sunday in reliance upon the representations of the latter, that defendants were in no way responsible for his making the sale, and that consequently the concealments and representations of which they were found guilty could not have operated as an inducing cause of Sime's action. The argument was a proper one to make in the trial court, where it was necessary to determine whether Sime was deceived by the conduct of the defendants into making a sale he would not otherwise have made. We do not see how the trial court could well have determined as a matter of fact that Sime parted with his interest, which he believed to have great value, without being influenced and induced thereto by the defendants' fraud; certainly such a conclusion cannot be reached as a matter of law. The actionable deceit for which defendants were found liable was not in misrepresenting the value of the bonds, but in creating a false set of circumstances which induced Sime to believe it was best for him to sell at the debased price; and even if the court had found that Sunday also had been guilty of deceit, that fact would not exculpate the defendants. (*Wennerholm* v. *Stanford Univ. Sch. of Med.*, 20 Cal.2d 713, 717 [128 P.2d 522, 141 A.L.R. 1358] ; *Elliott* v. *Federated F. & V. Growers*, 108 Cal.App. 412 [291 P. 681] ; 37 C.J.S. § 39, p. 287.)

While we have discussed the release as if Sime alone had signed it, it will be recalled that it was a joint-release signed by Mr. and Mrs. Sime and Mr. and Mrs. Travers. Twenty-five thousand dollars was divided equally between Sime and Travers, and Sime also received a release of indebtedness of $3,100 to E. R. & W. Defendants did not plead but on a motion to exclude evidence argued that there was a misjoinder of parties in that the other signers of the release were not joined either as plaintiffs or defendants, and this alleged defect of parties is urged on the appeal. However, the arguments on the point all proceed on the theory that before the present action could be maintained it was necessary that the release be rescinded by all signers thereof

and the consideration received by all of them restored to the defendants. The premise being untenable, the contention that there was a defect of parties must fail. Sime alone had a cause of action for his damages. Travers was neither a necessary plaintiff nor defendant. The judgment affected the rights of Travers in no manner whatsoever.

We think it is clear that damages were properly awarded plaintiff without decreeing dissolution of the joint venture and directing an accounting. The joint venture ended when Sime sold out to defendants and neither party to it retained a right to an accounting by the other. Moreover, plaintiff's claim was not one within the scope of the joint venture.

The judgment is affirmed.

Wood, J., concurred.

Vallee, J., did not participate herein.

The opinion was modified and both petitions for a rehearing were denied January 13, 1950. The following opinion was then rendered:

THE COURT.—Two petitions for rehearing have been filed by appellants. After reading them we deem it advisable to make some minor corrections in the opinion heretofore filed. Also, it is necessary to decide one point that has been raised for the first time on petition for rehearing and to discuss certain statements made by the author of one of the petitions.

In their briefs appellants made the point that Tad Travers, Kathleen Travers and Iona H. Sime were indispensable parties for the reason that they had signed a joint release with plaintiff and "that there could be no rescission of the release without the joinder of all the makers thereof." In one of the petitions for rehearing it is stated that the point of nonjoinder raised by appellants was not decided and that the failure to decide it "deprives appellants of their property without due process of law and denies to appellants the equal protection of the laws of the State of California." A reference to the briefs and to our opinion will readily show that the contention of appellants was fully considered and disposed of.

In the same petition for rehearing it is argued that the record shows without dispute that Sime and Travers were joint

adventurers and that Travers was therefore an indispensable party. It is asserted that this contention was urged by appellants in the trial court upon a motion to exclude evidence. We are unable to find any support for the statement in the 340 pages of reporter's transcript of the argument on the motion. The ground for the claim of misjoinder advanced in the trial court was the one that was repeated in the briefs, and which was disposed of in our opinion.

 Under ordinary circumstances we would be justified in ignoring the point now raised for the first time by petition for rehearing. (*Sanders* v. *Howard Park Co.,* 86 Cal.App.2d 721, 723 [195 P.2d 898], and cases cited.) However, the question whether one not named is an indispensable party (rather than a merely necessary party, see, *Bank of California* v. *Superior Court,* 16 Cal.2d 516, 521-524 [106 P.2d 879]), goes to the jurisdiction and may be raised at any time. (*Ambassador Petroleum Co.* v. *Superior Court,* 208 Cal. 667, 671 [284 P. 445]; *Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232, 265 [73 P.2d 1163].) Incidentally, these cases are cited for the first time in the petitions for rehearing. The point will therefore be considered for the reason that it involves a question of jurisdiction.

 It appears to be contended in one of the petitions for rehearing that the court found that Sime and Travers were joint adventurers, the statement being that the trial court found "that Tad Travers had an interest in the ultimate success and profits of the joint adventure" and that one of the findings reads, in part, that certain defendants conspired to defraud "this plaintiff and his coadventurer of the fruits and profits of such venture." Although it might appear from this partial quotation that the court was referring to Travers as Sime's coadventurer, it clearly appears from the entire finding that the coadventurer mentioned was Edgerton, Riley and Walter, and not Travers. The question whether Sime and Travers were coadventurers was not raised or tried or determined by the court. Therefore, the argument now advanced must fall back on the claim, also made by appellants, that it was shown by undisputed evidence that Sime and Travers were coadventurers. Needless to say, we could not regard this as an established fact unless the evidence relevant to that question was complete, uncontradicted and conclusive, as to the existence of the claimed relationship. Instead of the evidence being complete it was extremely meager, and it was

manifestly inconclusive. It was shown that Travers was associated with Crowell, Weedon and Company, who had a 50 per cent interest in the Burbank project which was later acquired by Sunday. He had no contract or other connection with Edgerton, Riley and Walter. We have been referred to no evidence, and we have found none, explanatory of his arrangement with Sime. As a witness he did not assert ownership of an interest in the claim sued on, although he expressed the opinion that Sime should share any recovery with him. This court would be unjustified in assuming as an established fact that Sime and Travers were joint adventurers.

But even if the two were jointly interested in the claim, Travers was not an indispensable party to an action brought thereon by Sime, in whose name stood all the property rights involved. (*Russ* v. *Tuttle,* 158 Cal. 226 [110 P. 813] ; *Ah Tong* v. *Earle Fruit Co.,* 112 Cal. 679 [45 P. 7] ; *Williams* v. *Southern Pac. R. R. Co.,* 110 Cal. 457 [42 P. 974] ; *Chow* v. *Sing,* 87 Cal.App. 278 [261 P. 1039].) Even if Travers should have a meritorious claim against Sime, which, of course, is not a question for decision in the present case, it is not a matter which concerns the defendants. (158 Cal. 230, *supra.*)

The petition for rehearing makes the further point, which was not raised in the briefs, that the judgment should not have gone against the corporate defendants. Certain facts are stated with relation to the original stock issues of the corporations, but no transcript references are given, nor is it stated that the alleged facts were before the trial court. The point is not one which goes to the question of jurisdiction, and having been raised for the first time on petition for rehearing, will not be considered. (See cases cited, *supra.*)

Appellants' petition for a hearing by the Supreme Court was denied February 8, 1950.