The **FILTEX CORPORATION,**
Appellant,

v.

**AMEN ATIYEH,** Appellee (two cases).
Nos. 13623, 13489.

United States Court of Appeals
Ninth Circuit.

Oct. 13, 1954.

Rehearing Denied Nov. 26, 1954.

————

Vernon D. Beehler, Huebner, Beehler, Worrel & Herzig, Los Angeles, Cal., for appellant.

Lyon & Lyon, Los Angeles, Cal., for appellee.

Before STEPHENS and CHAMBERS, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge.

The plaintiff (appellee here) brought this action in the United States District Court, Southern District of California, Central Division, against the defendant (appellant here). The case involved two appeals from judgments entered in that court.

The first appeal is from an interlocutory judgment finding the defendant-appellant guilty of infringement of Letters

Patent of the United States No. 2,556, 022 and to have been guilty of a breach of confidential relationship and ordering an injunction and accounting and an award of attorney fees. The second appeal is from a judgment entered upon the report of the Special Master on the accounting awarding damages and attorney fees.

This suit arises under the patent laws of the United States and the jurisdiction of the District Court and Appellate Court is well founded.

Plaintiff, for some time, sold and repaired various of the popular types of vacuum cleaners which included repairing some Filtex machines. While thus engaged he discovered that there were very few machines that had a nozzle that would thoroughly remove, in one operation, surface lint and hair together with imbedded dirt, without harm to the rug.

In 1945 he became a distributor and salesman of Filtex vacuum cleaners which at that time were equipped with a nozzle (Plaintiff's exhibit 3). As such salesman he received many complaints that the machine would not pick up hair and lint.

The plaintiff, in his own words, "laid awake nights for a long time, besides doing a lot of mechanics, and finally realized after considerable deliberation, that the nozzle, exhibit 3, would only clean for a distance of four inches or so in the center when it was sealed on a rug". The plaintiff demonstrated to the trial court how he began experiments, and made certain changes. The difficulties complained of in the prior rug tool were eliminated and he had a device that was successful in removing the dirt, lint and hair.

He then advised the defendant of the improvements he had made and was asked by the defendant to bring his invention with him to California. He complied and demonstrated his invention to Mrs. Hoppe, President of Defendant Company, and to others connected with the defendant corporation. Prior to this meeting, Plaintiff had filed his application for patent as he so advised Mrs.

Hoppe, and told her he would make it available to the defendant on a royalty basis. He later wrote her a letter to the same effect. The Plaintiff disclosed his invention to the defendant in confidence. It was certainly made, as stated by the trial court, with the thought, at least in Mr. Atiyeh's mind that it was for the corporation to go forward and purchase it on a royalty basis or to reject it. However, the defendant filed in the name of John Lovick an application in which he attempted to have issued a patent to defendant for the invention exhibited to defendant by plaintiff. During the pendency of this patent application Lovick was called upon to file a statement under patent office rule 202 as to his first date of invention of a claim identical with one of the claims of the plaintiff's patent. The statement filed by Lovick alleges September 4th, 1947, as his earliest date. This, of course, being subsequent to plaintiff's date of filing of his application which was May 14th, 1947.

The alleged prior use and prior invention by the defendant are all based on the disclosures made by the plaintiff to the defendant. The defendant was working, prior to the information it received from the plaintiff, to evolve a device to accomplish the result accomplished by the plaintiff and this it was unable to do until it was shown the way by the plaintiff. Then and only then it became easy. As quoted by the trial court—"As said by Mr. Justice McKenna in the oft-quoted passage from Diamond Rubber Co. v. Consolidated Tire Co. [220 U.S. 428, 31 S.Ct. 444, 447, 55 L.Ed. 527], 'Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by a merely skilful attention. But the law has other tests of the invention than subtle conjectures of what might have been seen and yet was not. It regards a change as evidence of novelty, the ac-

ceptance and utility of change as a further evidence, even as demonstration.'

■ "We think there can be no doubt as to the patentability of complainant's device; but, if there were doubt, there can be no question but that this doubt should be resolved in favor of the validity of the patent. The ordinary presumption of novelty arising from the grant of the patent is greatly strengthened because of the contest in the patent office.

\*　\*　\*　\*　\*　\*

"And, in addition to this, we have the presumption arising from the imitation of the patented article by the manufacturers of the alleged infringing device. As to this, we agree with what was said by Justice Hough, speaking for the Circuit Court of Appeals of the Second Circuit in Kurtz v. Belle Hat Lining Co., 280 F. 277–281. 'The imitation of a thing patented by a defendant, who denies invention, has often been regarded, perhaps especially in this circuit, as conclusive evidence of what the defendant thinks of the patent, and persuasive of what the rest of the world ought to think.'"

There was clearly an invention here although the changes necessary to accomplish the results were very simple. He took the prior art and made the changes. First, he cut grooves in the roller and cut some openings in the rear side of this wall and let the air in the rug tool. With these simple changes he changed the rug tool that would not pick up surface dirt such as hair and lint, to one that removed this accumulation on the rug and provided a means of cleaning the surface of the tool by removing the lint and dust from it. It was as above quoted from the case of Diamond Rubber Co. v. Consolidated Tire Company, 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527. "Knowledge after the event is always easy, and problems once solved present no difficulties indeed" and without going further into detail it can be said that the plaintiff changed an unsatisfactory tool into one that was satisfactory as the trial Court found, by

"(a) The cutting of the slots number 12 in the flange 7, Exhibit 1, permitted air to be drawn in over the entire area of openings numbered 10, 13 and 19 of the tool, Exhibit 1, rather than being confined to the area defined by the flange 7;

"(b) The serrations 16 of the patent in suit, Exhibit 1, combed hair, lint and surface dirt from rugs and carpets;

"(c) Air flowing through slot 17 was required to take a circuitous path around flange 7 into the slots 12, Exhibit 1, thus setting up a whirling motion useful in removing dirt, lint and hair from rugs and carpets;

"(d) On the rearward stroke of the rug tool, the slot 17 is valved closed by the roller 14 and air passing through it is substantially confined to the openings in the roller defined by the slots 16 which serves to clean the roller and slots of accumulated dirt, lint and hair."

■ The trial Court was also justified in finding that the plaintiff's patent is valid and that it filled a long felt want. The Supreme Court in the case of Paramount Publix Corporation v. American Tri-Ergon Corporation, 294 U.S. 464–474, 55 S.Ct. 449, 454, 79 L.Ed. 997, stated:

"Where the method or device satisfied an old and recognized want, invention is to be inferred, rather than the exercise of mechanical skill. For mere skill of the art would normally have been called into action by the generally known want."

The want was here, it was overcome by the plaintiff, he discovered the difficulty and provided a remedy not thought of before. We feel that the following applies here as stated in the case of Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45–63, 43 S.Ct. 322, 328, 67 L.Ed. 523.

"In administering the patent law, the court first looks into the art, to find what the real merit of the al-

leged discovery or invention is, and whether it has advanced the art substantially. If it has done so, then the court is liberal in its construction of the patent, to secure to the inventor the reward he deserves. If what he has done works only a slight step forward, and that which he says is a discovery is on the border line between mere mechanical change and real invention, then his patent, if sustained, will be given a narrow scope, and infringement will be found only in approximate copies of the new device. It is this differing attitude of the courts toward genuine discoveries and slight improvements that reconciles the sometimes apparently conflicting instances of construing specifications and the finding of equivalents in alleged infringements. In the case before us, for the reasons we have already reviewed, we think that Eibel made a very useful discovery, which has substantially advanced the art. His was not a pioneer patent, creating a new art; but a patent which is only an improvement on an old machine may be very meritorious, and entitled to liberal treatment. Indeed, when one notes the crude working of machines of famous pioneer inventions and discoveries, and compares them with the modern machines and processes exemplifying the principle of the pioneer discovery, one hesitates in the division of credit between the original inventor and the improvers; and certainly finds no reason to withhold from the really meritorious improver, the application of the rule 'ut res magis valeat quam pereat' " (That the thing may rather have effect than be destroyed).

The above is cited in the case of Pointer v. Six Wheel Corporation, 9 Cir., 177 F.2d 153, together with many other citations.

This patent being valid, we come to the question of infringement. There can be no doubt that the defendant used the Atiyeh patent as found by the trial Court in findings X, XI and XII, as follows:

## "X.

"That the flange surrounding the suction chamber in the accused structures, Exhibits 2 and A, functions in the same way and accomplishes the same result as the flange 7 of Exhibit 1. The flange surrounding the suction chamber in the accused structures, Exhibits 2 and A, and the prior Filtex nozzle, Exhibit 3, are all located ⅛ of an inch above the plane of the contact face. The flange 7 of Exhibit 1 terminates substantially in the plane of said contact face.

## "XI.

"The removal of the wall of the flange on the front thereof in Exhibits 2 and A functions in the same way and accomplishes the same results as the slots 12 of Exhibit 1.

## "XII.

"That the flange surrounding the suction chamber in the accused structures, Exhibits 2 and A, when in use is vertically disposed and terminates substantially in the plane of the contact face, i. e., the working face of the rug tool."

■ These findings were well supported by the evidence. There is only a slight difference in the accused device and the device patented by the plaintiff. These slight differences are immaterial. The devices function the same way to accomplish the same result. The rule is well stated in the case of Sanitary Refrigerator Company v. Winters, 280 U.S. 30–42, 50 S.Ct. 9, 13, 74 L.Ed. 147:

"except where form is of the essence of the invention, it has little weight in the decision of such an issue; and, generally speaking, one device is an infringement of another 'if it performs substantially the same function in substantially the same way to obtain the same result. * * * Authorities concur that the substantial equivalent of a

thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape.' Union Paper Bag Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935, and see Elizabeth v. Pavement Co., 97 U.S. 126–137, 24 L.Ed. 1000. That mere colorable departures from the patented device do not avoid infringement, see McCormick v. Talcott, 20 How. 402–405. A close copy which seeks to use the substance of the invention, and, although showing some change in form and position, uses substantially the same devices, performing precisely the same offices with no change in principle, constitutes an infringement. Ives v. Hamilton, 92 U.S. 426–430, 23 L.Ed. 494. And even where, in view of the state of the art, the invention must be restricted to the form shown and described by the patentee and cannot be extended to embrace a new form which is a substantial departure therefrom, it is nevertheless infringed by a device in which there is no substantial departure from the description in the patent, but a mere colorable departure therefrom. Compare Duff v. Sterling Pump Co., 107 U.S. 636–639, 2 S.Ct. 487, 27 L.Ed. 517."

There is no reason for disturbing the trial Court's finding that the defendant's infringement was wilful and deliberate; that the patented device of the plaintiff was disclosed to the defendant in confidence and that the defendant appropriated it to its own use.

■ There was a wrongful disregard of the confidential relationship. Mrs. Hoppe, the president of the defendant corporation, after the disclosure was made, assured the plaintiff that "we are giving it all the necessary tests and hope to adopt it." This assurance was given in a letter (Exhibit 5) signed by Mrs. Hoppe. Certainly there was a wrongful disregard of the confidential relationship. This being true, we find a close parallel to the facts in the case of Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912, 922.

"We come then to the question as to whether complainant is entitled to relief on account of the manufacture and sale by defendant of devices which embody complainant's invention prior to the grant of his patent; and, as heretofore indicated, we think that this, also, must be answered in the affirmative. The general rule, of course, it that the monopoly of a patent which entitled a patentee to damages for infringement commences only when the patent is granted; but where, in advance of the granting of a patent, an invention is disclosed to one who, in breach of the confidence thus reposed, manufactures and sells articles embodying the invention, such person should be held liable for the profits and damages resulting therefrom, not under the patent statutes, but upon the principle that equity will not permit one to unjustly enrich himself at the expense of another. The question was before the Circuit Court of Appeals of the Seventh Circuit in the recent case of Booth v. Stutz Motor Car Co. of America, 7 Cir., 56 F.2d 962, and we think that the decision there rendered is eminently sound and just. It would be a reproach to any system of jurisprudence to permit one who has received a disclosure in confidence to thus appropriate the ideas of another without liability for the wrong.

"It is argued that there was no confidential relationship existing between complainant and defendant with respect to the disclosure of complainant's invention; but this contention is groundless. Complainant offered to disclose his invention to defendant with a view of selling it to defendant, and so stated in his

letter. Defendant was interested in the proposition and invited the disclosure, otherwise it would not have seen complainant's specification and drawings until the patent was granted. While there was no express agreement that defendant was to hold the information so disclosed as a confidential matter and to make no use of it unless it should purchase the invention, we think that in equity and good conscience such an agreement was implied; and having obtained the disclosure under such circumstances, defendant ought not be heard to say that there was no obligation to respect the confidence thus reposed in it."

■ As contended by appellee, the defendant cannot avoid the consequences of its acts. From the facts in this case the trial Court was correct in finding the defendant's appropriation of plaintiff's patent on the theory of unjust enrichment, Hoeltke v. C. M. Kemp Mfg. Co., supra.

■ There is no reason to disturb the finding of the lower Court that "The acts of defendant toward plaintiff justified the awarding of reasonable attorney fee."

■ As to what would be a reasonable royalty presents a serious question. Many factors determine a reasonable royalty other than the precise improvement. The entire unit must be considered. However, it must be borne in mind that the defendant in this case is the wrongdoer and as stated in Horvath v. McCord Radiator & Mfg. Co., 6 Cir., 100 F.2d 326–335:

"McCord is an infringer and the burden must be placed upon it as a wrongdoer and it is the duty of the court to find for Horvath with reasonable approximation that to which he is entitled and in so doing, there is no duty to exercise meticulous care to avoid a hardship on McCord."

■ It is earnestly contended by the defendant that the royalty of ten per cent allowed by the Master was too high, but from an examination of the record we see no reason which would warrant disturbing the findings of the Master or the finding of the trial court sustaining his finding.

Judgment is affirmed in Case No. 13,623 and Case No. 13,489.