[Civ. No. 25904. Second Dist., Div. Three. Sept. 28, 1962.]

ROBERT S. HELFER et al., Plaintiffs and Appellants, v. DERRICK P. HUBERT et al., Defendants and Respondents.

24

Fain & Lavine and Harry M. Fain for Plaintiffs and Appellants.

Stephen B. McNally for Defendants and Respondents.

FILES, J.—Plaintiffs are appealing from a summary judgment which was granted on the ground that the action is barred by the statute of limitations. The notice of appeal states that plaintiffs appeal from the minute order granting the motion for summary judgment. Since the minute order

is not appealable (*Chilson* v. *P. G. Industries,* 174 Cal.App.2d 613, 616 [344 P.2d 868]), we will apply the rule that "A notice of appeal shall be liberally construed in favor of its sufficiency" (Cal. Rules of Court, rule 1*) and construe the notice to be what plaintiffs should have made it, namely, an appeal from the judgment.

The action is for fraud, and was commenced more than three years after the cause arose. The question is whether the court properly determined that the "discovery, by the aggrieved party, of the facts constituting the fraud" occurred more than three years prior to the action.

The general principles which control this appeal are well settled. Code of Civil Procedure, section 437c, provides that a defendant's motion for summary judgment must be supported by affidavits containing facts sufficient to entitle defendant to judgment. Upon such a showing the complaint may be dismissed unless the plaintiff, by affidavit, shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact. ▆▆ The affidavits of the party opposing the motion must be accepted as true, and if they do raise an issue as to a material fact, the motion must be denied. ▆▆ The affidavits are to be construed with all intendments in favor of the party opposing the motion. (*Desny* v. *Wilder,* 46 Cal.2d 715, 725 [299 P.2d 257].)

▆▆ Where the affidavits of the moving party are on their face sufficient, and the opposing party fails to come forward with counteraffidavits to show that his case has merit, the motion should be granted. (*Craig* v. *Earl,* 194 Cal.App.2d 652 [15 Cal.Rptr. 207]; *Newport* v. *City of Los Angeles,* 184 Cal.App.2d 229 [7 Cal.Rptr. 497]; *Nini* v. *Culberg,* 183 Cal. App.2d 657 [7 Cal.Rptr. 146]; *Estate of Kelly,* 178 Cal.App. 2d 24 [2 Cal.Rptr. 634]; *Kelly* v. *Liddicoat,* 35 Cal.App.2d 559 [96 P.2d 186].)

It is not enough that the complaint alleges sufficient facts. ▆▆ The value of the motion for summary judgment is that it may be used, under the limitations set forth above, to distinguish between a case raising a genuine issue of fact and one supported only by adept pleading. (See *Coyne* v. *Krempels,* 36 Cal.2d 257, 262 [223 P.2d 244]; *Hicks* v. *Bridges,* 152 Cal.App.2d 146, 148 [313 P.2d 15]; *Atchison* v. *McGee,* 141 Cal.App.2d 515 [296 P.2d 860]; *Schessler* v. *Keck,*

*Formerly Rules on Appeal, rule 1.

138 Cal.App.2d 663, 668 [292 P.2d 314]; *Cone* v. *Union Oil Co.*, 129 Cal.App.2d 558, 562 [277 P.2d 464].)

An action for relief on the ground of fraud must be brought within three years, but the cause of action is "not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." (Code Civ. Proc., § 338, subd. 4.)

The rules governing the application of this statute are summarized in *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412 at p. 437 [159 P.2d 958], as follows:

"The provision tolling operation of the statute until discovery of the fraud has long been treated as an exception and, accordingly, this court has held that if an action is brought more than three years after commission of the fraud, plaintiff has the burden of pleading and proving that he did not make the discovery until within three years prior to the filing of his complaint. [Citations.] Further, although negligence by the person defrauded is not a defense to a promptly brought action based upon intentional misrepresentation [citation], the cases construing section 338, subdivision 4, *supra*, have held that plaintiff must affirmatively excuse his failure to discover the fraud within three years after it took place, by establishing facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry. . . .

"It is not in every case, however, that a person is barred after three years by failure to pursue an available means of discovering possible fraud. The statute commences to run only after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry. Section 19 of the Civil Code provides: 'Every person who has actual notice of circumstances *sufficient to put a prudent man upon inquiry* as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.' (Italics added.)"

When the facts known to the plaintiff are susceptible to opposing inferences, the question of whether he has notice of "circumstances sufficient to put a prudent man upon inquiry" is a question of fact. (*Hobart* v. *Hobart Estate Co.*, *supra*, at p. 440; *Ramey* v. *General Petroleum Corp.*, 173 Cal. App.2d 386, 400 [343 P.2d 787]; *Sime* v. *Malouf*, 95 Cal.App. 2d 82, 104 [212 P.2d 946, 213 P.2d 788].) On the other hand, when knowledge had by or imputed to plaintiff is such

as to compel the conclusion that a prudent man would have suspected the fraud, the court may determine as a matter of law that there had been "discovery." (*Bainbridge* v. *Stoner*, 16 Cal.2d 423, 430 [106 P.2d 423] ; *Lady Washington Consol. Co.* v. *Wood*, 113 Cal. 482, 486 [45 P. 809] ; *Haley* v. *Santa Fe Land Imp. Co.*, 5 Cal.App.2d 415 [42 P.2d 1078].)

The cause of action on which plaintiffs rely here is set forth in their second amended complaint substantially as follows: that in March 1956 plaintiffs purchased a residence from defendants; that prior to the sale defendants falsely represented that the property had proper drainage for the disposition of surface water; that in fact, as defendants knew, the grading, facilities, landscaping and soil conditions, together with the grading and ditching of the adjacent property, created a condition inadequate to dispose of surface water; that the condition was such that plaintiffs, being inexpert, were unable to discover for themselves, and that they did not discover it until a heavy rainstorm on April 14, 1958, caused water to stand 3 or 4 feet deep on the property The action was begun on September 21, 1960.

Defendants pleaded the statute of limitations and then made a motion for summary judgment. The motion was supported by an affidavit which incorporated a letter written by one of the plaintiffs, and certain rainfall tables prepared by the United States Weather Bureau. The genuineness of the documents had previously been conceded in response to defendants' request under Code of Civil Procedure, section 2033. We put aside at the outset the rainfall tables and the argument which is based upon them. The trial court was in no position to determine on this motion the quantity and rate of rainfall at plaintiffs' residence at any given time, or the effect which any particular quantity and rate of precipitation would have on this property.

 The letter written by one of the plaintiffs to defendants on January 5, 1957, is of significance because it is direct evidence of the state of mind of the plaintiffs more than three years prior to the action. The text of the letter is as follows:

"I shall not try to recount *all* the misfortunes which have befallen me since buying your former residence because there is not enough time or paper. Nevertheless, I must mention a few: doorknobs which fell off, a soot filled water heater, a non-repairable faulty garbage disposal, cracking walls in the bedroom and master bath, a mysterious (still-unsolved) large

pool of water under the south-west corner of the house, doors to the master bath which won't open and close because they do not fit properly at the top and sides, a rain spout over the garage which just fell from its own weight because it was hung insecurely, patio furniture which fell apart because of the rotting wood which was well covered by a recent painting.

"All of the above has given me two severe heart attacks since August, cost me over four months of work and nearly five thousand dollars in medical bills. BUT—NOT ENOUGH! This morning there is a leak in the den roof over the bookcase where there was an old mark from water. I questioned you about this when the house was purchased and you assured me that 'it was nothing' and had been attended to. I must assume that you deliberately mis-led me and that Mr. Montgomery probably knew about it also. If I had the time and the energy I would certainly try to find a way to take you to court, but I shall satisfy myself with this letter, with the profound hope that your conscience hurts just a little when you receive my check each month. Tricks such as the one you have perpetrated on me have their way of coming back to haunt you in the end, particularly if the victim should have a third heart attack just from the pure aggravation and fruitlessness of it all."

 This letter constitutes prima facie evidence that in January 1957 plaintiffs had discovered under their house a large pool of water of mysterious origin, that they had been deliberately misled with respect to at least one matter when they purchased the house, that they believed they were entitled to relief in court.

 These circumstances would seem sufficient to establish that plaintiffs were then put upon inquiry as to whether they had a cause of action based upon the representation allegedly made by defendants that the property had adequate drainage. The letter was, of course, not conclusive, for the assertions contained in it might have been denied or explained to have some other significance. Had plaintiffs shown by counteraffidavit that the letter meant something else, a triable issue of fact would have been disclosed.

 In opposition to the motion for summary judgment the writer of the letter submitted an affidavit which stated in part:

"The circumstances under which this letter was written are the following: In the winter of 1956-1957 a number of incidents occurred and things were found by me in the house that were unsatisfactory and were not as had been represented

to me. A number of these items are set forth in detail in my letter of January 5, 1957. Prior to this time some telephone men had made additional telephone installations in the house. At some time during the winter of 1956-1957, the precise date of which I do not now recall, one of the telephone men, having made the telephone installation, informed me or my wife that there was a certain wet area beneath the house. Since this was the rainy season in California, I thought nothing particularly of it at the time when the event was related to me, since if there was any water beneath the house, and I never saw it myself, it did not cause us any particular trouble except that we wondered about it, as well as the other items or conditions in the house which were unsatisfactory. I resolved to make a mental note of it and see if anything came of it in the future.''

Plaintiff's affidavit further stated: ''When I wrote the letter of January 5, 1957, I was particularly motivated in writing such letter because of the leak in the den. By way of emphasis and in order to show my anger at the alleged misrepresentations regarding the home by Mr. Hubert, and the unsatisfactory conditions, I narrated everything I could think of in the way of incidents or problems that had occurred in the past. It was my hope in writing this letter that Mr. Hubert would get in touch with me and would do something about such conditions as could be taken care of.''

In giving this affidavit the ''liberal construction'' which the law requires, it is not inappropriate to have in mind that all of the pertinent facts were within the personal knowledge of the affiant. This is not a case in which the party opposing the motion must resort to generalities or draw inferences because of the inaccessibility of better evidence. Furthermore, the affidavit was prepared under the guidance of counsel, who was well aware that the thrust of the motion for summary judgment was to test the bona fides of plaintiffs' contention that until April 1958 they had not discovered either the facts constituting the fraud or circumstances sufficient to put a prudent man upon inquiry.

Plaintiff's affidavit directly states that the 1957 letter constituted a list of things which were not as had been represented. Although he denies seeing the water personally, he admits that in his own mind he connected it with the rainy season, wondered about it, and made a mental note of it. The affidavit establishes further that the purpose of writing the letter was to try to induce the defendants to ''do something''

about the conditions of which plaintiff complained. Thus the plaintiff's affidavit shows on its face that when the letter was written in 1957 plaintiffs believed that when they had bought the house in 1956 conditions had been misrepresented, and that these misrepresentations related to the water under the house, among other things. Thus we have an admission, not merely of circumstances sufficient to put a prudent man on inquiry, but of facts actually known to the plaintiffs.

The affidavit tends to minimize the quantity of water found in 1957, characterizing it as a "wet area." Plaintiffs' counsel argues that there was not enough water to put plaintiffs on notice as to the serious drainage problem which was discovered later, and that the 1957 water could have come from a plumbing leak. The amount of water is of no importance whatever except for the effect it had on plaintiffs' thinking. The affidavit establishes that the plaintiffs believed in 1957 that the water (or "wet area") indicated a misrepresentation made to them when the house was bought, and for which plaintiffs sought redress in 1957. The affidavit does not say that plaintiffs thought in 1957 that the water came from a plumbing leak. On the contrary, the affidavit admits that the affiant thought of the water in connection with the rainy season and that he made a mental note of it for future observation. Plaintiffs' admissions take on even greater significance when read with the detailed allegations of the complaint.

 A person who seeks the benefit of late discovery of his cause of action for fraud is required to plead and prove the times and circumstances under which the facts constituting the fraud came to his knowledge, so that the court may determine whether the discovery was within the three-year period. (*Consolidated R. & P. Co.* v. *Scarborough,* 216 Cal. 698, 702 [16 P.2d 268]; 1 Witkin, California Procedure, 652.) To comply with the rule plaintiffs here alleged that the discovery occurred in April 1958 when, after heavy rains, water gathered on plaintiffs' property and plaintiffs consulted a plumber, "and plaintiffs did then learn from said plumber for the first time that water was pouring in beneath the house from higher ground."

Plaintiffs have offered no good reason for not consulting a plumber or some other qualified person in January 1957 when they believed they were the victims of misrepresentation in this respect, and when they "wondered about it" and "resolved to make a mental note of it" and wrote to defendants to try to make defendants "do something" about it.

 Plaintiff's affidavit in opposition to the motion for summary judgment contains this statement: "Until the plumber informed me that the water underneath the house came from seepage from higher ground, I did not know that there was any condition underneath the house or around the house which required special attention in this regard." This statement—in effect that plaintiffs did not actually know the full import of the facts in their possession—does not excuse the delay. Where a party is aware of facts which would make a reasonably prudent person suspicious, the means of knowledge are the equivalent of knowledge. (See *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412 [159 P.2d 958] at p. 438, and cases collected there.) Plaintiffs here concede not merely that they were suspicious but that they actually believed in January 1957 that they were the victims of misrepresentation and they then were looking for redress. It is immaterial that they did not then have full knowledge.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.