Michael J. VON BRIMER et al., Co-Executors of the Estate of Joseph W. Von Brimer, Deceased, Plaintiffs,

v.

WHIRLPOOL CORPORATION, Defendant.

Civ. No. 51322–CBR.

United States District Court, N. D. California.

Dec. 12, 1973.

Belli, Ashe, Ellison & Choulos, Seymour L. Ellison, San Francisco, Cal., for plaintiffs.

Carl Hoppe, Charles E. Hanger, San Francisco, Cal., Burton Y. Weitzenfeld, Chicago, Ill., for defendant.

## MEMORANDUM OF OPINION, ORDER AND FINAL JUDGMENT

RENFREW, District Judge.

On May 13, 1969, Joe W. von Brimer [1] filed a three-count complaint against Whirlpool Corporation. Both the second claim for relief (alleging malicious institution of a patent interference action) and the third claim (alleging interference with von Brimer's contractual relations) have been heretofore dismissed after trial by order dated August 17, 1973.[2]

The Court is now presented with Whirlpool's motion for summary judgment as to the first claim for relief which charges that defendant "fraudulently appropriated" von Brimer's linear induction motor for use in washing machines and filed a patent application based upon it.

Plaintiffs claim that commencing in August, 1962, von Brimer revealed details of his invention to Whirlpool and its employee, Robert E. Lake, in confidence during negotiations concerning the commercial feasibility of von Brimer's invention. On November 5, 1962, after the negotiations had broken down, von Brimer filed an application for Letters Patent for his invention. Lake filed a patent application for the same invention on July 8, 1963 (Application Serial No. 293,420). On July 13, 1965, von Brimer was awarded United States Letters Patent 3,194,032 on his invention. Whirlpool filed an amended patent application on December 15, 1965. As a result of the Lake application as amended, on April 26, 1966, the Commissioner of Patents declared an interference and sent notice thereof to the respective parties.

The essence of plaintiffs' remaining claim is that Whirlpool, in the guise of a prospective licensee, fraudulently obtained the details of von Brimer's invention. As of August 29, 1962, von Brimer was the sole owner of the invention at issue. On October 24, 1962, he assigned an undivided one-half interest in the invention to Stephen A. Bollinger and on November 30, 1963, assigned his remaining interest to V. B. Research & Development. Thereafter von Brimer held no interest in the patent until after Whirlpool filed the amended patent application on December 15, 1965. This amended patent application gave rise to the interference action, and its filing is the last date on which it is alleged that the fraudulent misappropriation occurred. Hence the crucial time period in which the alleged fraud and resulting actionable damage to von Brimer would have to have occurred is that period between August 29, 1962, and November 30, 1963.

Accepting plaintiffs' allegation of fraud as true for the purposes of this motion, plaintiffs still are not entitled as a matter of law to the relief sought because Whirlpool has not been unjustly enriched nor has von Brimer been damaged in any other way by the alleged fraudulent appropriation. It is undisputed that during the relevant time period, i. e., when von Brimer had an interest in his invention, Whirlpool did not manufacture or license for manufacture any washing machine embodying von Brimer's invention.[3] In other words, prior to November 30, 1963, and even to date, Whirlpool has not enjoyed any earnings from the manufacture, sale, development, or marketing of any washing machine embodying von Brimer's allegedly appropriated idea.

 Plaintiffs contend, however, that actionable "uses" are not restricted to commercial exploitation through actual manufacture and sale. They argue

---

1. Joe W. von Brimer died on March 26, 1971, and by order dated October 8, 1971, the representatives of his estate were substituted as parties plaintiff (hereinafter plaintiffs).

2. For a full discussion of the reasons for the dismissal of the second and third counts and for a more complete factual background of this litigation, see that order which is reported at 362 F.Supp. 1182 (N.D.Cal.1973).

3. In fact, it is undisputed that Whirlpool has not done so to date.

that Whirlpool "used" von Brimer's idea by filing its patent application. Those cases which involve unfair competition give no clear definition of the exact scope of the "uses" which can give rise to a claim for relief. On the other hand, it is well established that this claim is grounded "upon the principle that equity will not permit one to unjustly enrich himself at the expense of another." Hoeltke v. C. M. Kemp Mfg. Co., 80 F.2d 912, 923 (4 Cir. 1935), cert. denied, 298 U.S. 673, 56 S.Ct. 938, 8 L.Ed. 1395 (1936), quoted in Engelhard Industries, Inc. v. Research Instrumental Corp., 324 F.2d 347, 352 (9 Cir. 1963), cert. denied, 377 U.S. 923, 84 S.Ct. 1220, 12 L.Ed.2d 215 (1964). See also Filtex Corporation v. Amen Atiyeh, 216 F.2d 443, 447 (9 Cir. 1954). Whatever may be the limit on actionable "uses" in this context, the element of economic detriment to the plaintiff, whether shown by unjust enrichment to the defendant or by proof of other economic damage to the plaintiff, is essential to the recovery of money damages. Atlantic Wool Combing Company v. Norfolk Mills, Inc., 357 F.2d 866, 869 (1 Cir. 1966). Therefore, assuming solely for the sake of argument that plaintiffs' position on the "use" issue is correct, the undisputed facts nevertheless demonstrate that Whirlpool has not been unjustly enriched by the alleged fraudulent "use." Thus, plaintiffs must establish another form of economic loss.

It is also undisputed that applications to the Patent Office are confidential. In fact, von Brimer himself did not know of the Lake patent application (including its amendment) until 1966 when the interference was declared. Therefore, neither the fair market value of von Brimer's interest in his invention nor the consideration which he received for the transfer of his interest could have been adversely affected by Lake's interfering claims since these claims remained unknown until well after the termination of von Brimer's interest in the invention. Similarly because the Lake application was not public information and was not known to von Brimer prior to 1966, the alleged fraudulent appropriation could not have inhibited von Brimer in any way from marketing or manufacturing his invention during the relevant time period. On the basis of these undisputed facts as to the confidentiality of the Lake application and von Brimer's unawareness of it, it is clear that as a matter of law plaintiffs have failed to establish any damage to von Brimer's interest in the invention during the relevant time period which resulted from the alleged fraudulent "use."

■ In their most recent memorandum plaintiffs contend that the damage allegedly suffered in 1967 as a result of the non-performance of the Cook Machinery Co., Inc., contract should relate back to the time of the alleged fraud in 1962. Under this "relation back" argument, the alleged fraud and the resulting damage would be seen as a single, unified occurrence so that the damage would be deemed to have occurred within the' time during which von Brimer still had an interest in the patent. The fatal error of their contention is that it attributes damages to von Brimer that he, in his individual capacity, never actually suffered. It is now beyond question that on November 30, 1963, von Brimer transferred his remaining rights in the patent to V. B. Research & Development "in consideration of the sum of $10.00 * * * and other valuable consideration * * * " (Exhibit 3 to Plaintiffs' Memorandum filed November 6, 1973), and that by resolution of the Board of Directors dated December 23, 1964, von Brimer was to receive fifty-one per cent of the gross income of the company from any and all sources in consideration of his assignment of certain patents to the corporation (Exhibit 4 to the same memorandum).[4] Plaintiffs do not allege that these transac-

---

4. For the purposes of this opinion the Court assumes, although the record is devoid on the question, that the patents assigned by von Brimer to V. B. Research & Development for which he was to receive 51% of its gross income included the patent in question. However, the assumption does not alter the Court's decision in any event.

tions were not bona fide. Nor do they allege that the consideration received by von Brimer was insufficient at the time of the transfer or in any way affected by the alleged fraudulent "use" by Whirlpool. As indicated above, the confidentiality of the Lake application compels the conclusion that that application could not have affected von Brimer's dealings with the patent in these 1963 and 1964 transactions. Thus, the element which plaintiffs would have related back to the alleged 1962 fraud—namely, damages personal to von Brimer—is completely absent from this case.

■ In a final attempt to demonstrate some interest after the November 30, 1963, assignment, plaintiffs assert that von Brimer continued to have a legally protectable interest in the patent after that date as a stockholder in V. B. Research & Development and later as a recipient of income *through* that corporation. "Generally, a stockholder may not maintain an action in his own behalf for a wrong done by a third person to the corporation on the theory that such wrong devalued his stock and the, stock of the other shareholders, for such an action would authorize multitudinous litigation and ignore the corporate entity." Sutter v. General Petroleum Corporation, 28 Cal.2d 525, 530, 170 P.2d 898, 900–901 (1946). Where there is an injury to the corporation and its whole body of shareholders, the cause of action should be prosecuted by the corporation itself or by the shareholders derivatively if the corporation fails to act. Jones v. H. F. Ahmanson & Company, 1 Cal.3d 93, 106–107, 81 Cal.Rptr. 592, 598, 460 P.2d 464, 470 (1969). "Thus, 'the action is derivative, i. e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders * * *.' " Jones v. H. F. Ahmanson & Company, 1 Cal.3d at 106, 81 Cal.Rptr. at 598, 460 P.2d at 470. On the other hand, " '[i]f the injury is one to the plaintiff as a stockholder and to him individually, and

not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action * * *.' " Sutter v. General Petroleum Corporation, 28 Cal.2d at 530, 170 P.2d at 901. Such individual wrongs are actionable even when they affect a "substantial number of shareholders," but the individual cause of action exists only "[i]f the injury is not incidental to an injury to the corporation * * *." Jones v. H. F. Ahmanson & Company, 1 Cal.3d at 107, 81 Cal.Rptr. at 599, 460 P.2d at 471.

■ Only if von Brimer had been damaged before November 30, 1963, could he have been directly affected, as an individual, by the alleged fraud. Once the patent became, as plaintiffs themselves admit, an asset of the corporation, the alleged loss of the Cook Machinery Co., Inc., contract constituted an injury to the corporation and the whole body of shareholders, all of whose stock was thereby diminished in value. The injury to von Brimer was indirect and merely incidental to the injury to the corporation. Thus, von Brimer's status as a stockholder and an income recipient would not support an individual cause of action for damage to the corporation after November 30, 1963, nor does it support a claim of direct and personal damage to von Brimer after that date.

In essence, plaintiffs' argument would require the Court to ignore the corporate entity and to view von Brimer, individually, as the real beneficial owner of the patent at all times. This Court has already rejected plaintiffs' attempt to "pierce the corporate veil" on the issue of standing under the second and third claims of the complaint. Von Brimer v. Whirlpool Corp., 362 F.Supp. 1182, 1194–1195. The Court finds this argument no more persuasive here.

Therefore, even assuming for the purposes of this motion that a fraudulent appropriation by means of an actionable "use" has occurred, plaintiffs have failed to establish the key element of

economic detriment. There has been no unjust enrichment of defendant nor has there been any other damage to von Brimer's individual interest in the patent before that interest was terminated on November 30, 1963. As a result, defendant is entitled to a judgment in its favor on the first claim of the complaint as a matter of law.

■ Defendant also contends that, even if plaintiffs were able to establish all of the substantive elements of their claim, summary judgment must be entered against plaintiffs on the first claim because the action is barred by the applicable statute of limitations. The parties agree that in an action in which jurisdiction is based on diversity of citizenship, the Court must apply the appropriate California statute as construed by that state's courts. They disagree, however, on the specific statute to be applied. Relying on Monolith Portland Midwest Co. v. Kaiser Aluminum & C. Corp., 407 F.2d 288 (9 Cir. 1969), defendant contends that the applicable statute is § 339(1) of California Code of Civil Procedure which imposes a two-year limitation upon actions "upon a contract, obligation or liability not founded upon an instrument of writing * * *." The holding in the *Monolith* case was based upon an express and unchallenged finding of the district court that " 'no conduct of the defendants * * * was shown to constitute any variety of fraud * * *.' " 407 F.2d at 293, n. 4. Plaintiffs' specific allegations of fraud, which are assumed to be true for the purposes of this motion, clearly distinguish the instant case from the *Monolith* ruling.

■ Given this assumption of fraud, the applicable limitation period is three years with the action accruing when the aggrieved party discovers facts constituting the fraud. § 338(4), California Code of Civil Procedure.[5] Interpreting this section, the California Supreme Court has held:

"The statute commences to run only after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." Hobart v. Hobart Estate Co., 26 Cal.2d 412, 437, 159 P.2d 958, 972 (1945).

See also Helfer v. Hubert, 208 Cal.App. 2d 22, 26, 24 Cal.Rptr. 900, 902 (1962).[6] The aggrieved person must, of course, have available to him the means of inquiry into the facts constituting the fraud before he will be charged with constructive knowledge of those facts. Sime v. Malouf, 95 Cal.App.2d 82, 107, 212 P.2d 946, 960 (1949), 213 P.2d 788 (1950) (minor modification of another point on denial of rehearing).

The complaint was filed on May 13, 1969. More than three years earlier, von Brimer had received a notice dated April 26, 1966, from the Patent Office advising him that Interference Number 95,373 had been declared with regard to his Patent Number 3,194,032 on a "Washing Machine and Electromagnetic Drive System Therefor." This notice specified the claims of von Brimer's patent which were involved in the interference and identified the opposing parties as Robert E. Lake and his assignee, Whirlpool Corporation. Finally, the two-page notice specified the precise claims which conflicted.

■ While this question of knowledge can be a factual one, "when [the] knowledge had by or imputed to plaintiff is such as to compel the conclusion that a prudent man would have suspected the fraud, the court may determine as a matter of law that there has been 'discovery.' " Helfer v. Hubert, 208 Cal.App.2d at 26–27, 24 Cal.Rptr. at 902.

5. This section imposes a three-year period on:

"An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

6. This analysis of § 338(4), California Code of Civil Procedure, was adopted and applied in Turner v. Lundquist, 377 F.2d 44, 46–47 (9th Cir. 1967).

Under all of the circumstances, including von Brimer's firsthand knowledge of the disclosures made to Whirlpool in August, 1962, the April 26, 1966, notice of interference was clearly sufficient to have made a reasonably prudent man suspicious of fraud and thus to have commenced the running of the period of limitation as a matter of law.

Plaintiffs argue that von Brimer did not actually discover the fraud until July 13, 1966, when he received Robert E. Lake's Preliminary Statement with regard to Interference Number 95,373. This contention is unpersuasive. Actual knowledge of Whirlpool's defense of priority as revealed in Lake's Preliminary Statement was not necessary to make von Brimer suspicious of the alleged fraudulent appropriation. The April 26, 1966, notice to von Brimer was enough to put him on inquiry. Under the Patent Office rules and practice then in effect, no interference would have been declared unless the Lake application and the von Brimer patent claimed a common subject matter and until the conflicting claims were expressed in exactly the same language, excluding immaterial limitations or variations.[7] Moreover, the parties listed on the interference notice, Lake and Whirlpool, were the very parties to whom von Brimer had disclosed his invention during the 1962 negotiations. Unlike the defendants in Sime v. Malouf, 95 Cal.App.2d 82, 212 P.2d 946, *supra,* Whirlpool did not close off von Brimer's avenues of inquiry by intentionally concealing its identity and filing the interfering patent application in the name of a dummy agent. In fact, counsel for plaintiffs conceded at oral argument that the April 26, 1966, notice would have made von Brimer realize that " 'there's something fishy here'

* * *." [8] These facts and this suspicion clearly compel the conclusion that, as a matter of law, "discovery" under § 338(4), California Code of Civil Procedure, occurred upon receipt of the April 26, 1966, notice and, therefore, the three-year limitation period of that section began to run at that time.

Plaintiffs also contend that the statute of limitations was tolled under §. 356, California Code of Civil Procedure, by the interference action.[9] Section 356 is operative when a "plaintiff is legally prevented from taking action to protect his rights." Hoover v. Galbraith, 7 Cal. 3d 519, 526, 102 Cal.Rptr. 733, 737, 498 P.2d 981, 985 (1972) (statute tolled during pendency of appeal); Dillon v. Board of Pension Com'rs., 18 Cal.2d 427, 431, 116 P.2d 37, 39 (1941) (city charter required Board action before court proceedings permitted); see also Eistrat v. Cekada, 50 Cal.2d 289, 291–292, 324 P.2d 881, 882 (1958) (federal restraining order prohibits action against bankrupt or his property).

The facts disclose no injunction or statutory bar which legally prevented von Brimer from filing and prosecuting his claim for fraudulent appropriation. The mere declaration of an interference by the Patent Office has no such effect. Interference actions in the Patent Office do not prevent a federal court from exercising jurisdiction over a patent infringement action. Knight v. Rite Shoe Co., 23 F.2d 903 (1 Cir. 1928). *A fortiori* an interference action would not prevent prosecution of an unfair competition suit which is based on activities predating the issuance of the patent. Section 356 had no effect on the running of the statute of limitations in this action. Therefore, von Brimer's first claim was time-barred three years

---

7. U. S. Department of Commerce, Patent Office, Rules of Practice in Patent Cases, Rules 203 and 205 (1965), 30 Fed.Reg. 6645 (1965). See also U. S. Department of Commerce, Patent Office, Manual of Patent Examining Procedure, subchapters 1101.01 and 1101.02 (3d ed. 1961, as revised).

8. Reporter's Transcript, October 5, 1973, p. 20.

9. Section 356 provides:
"When the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action."

after the receipt of the April 26, 1966, notice.

In sum, defendant is entitled as a matter of law to a judgment in its favor on the first claim for two independent reasons. First, because Whirlpool has not been unjustly enriched and because plaintiffs cannot, as a matter of law, demonstrate any other damage to von Brimer's interest in the invention, there is no genuine issue of material fact relating to the necessary element of economic detriment. Thus defendant is entitled to judgment as a matter of law. Second, the facts concerning the application of the statute of limitations are not in dispute. Under § 338(4), California Code of Civil Procedure, plaintiffs' first claim is time-barred, and defendant is entitled to judgment as a matter of law.