MILES, INC., Plaintiff,

v.

SCRIPPS CLINIC AND RESEARCH FOUNDATION, Rorer Group, Inc., Armour Pharmaceutical Co., Revlon, Inc., Robert N. Nakamura, an individual, and Francis O. Zimmerman, as executor and personal representative of the Estate of Theodore S. Zimmerman, Defendants.

Civ. No. 88–0708–R (CM).

United States District Court,
S.D. California.

Jan. 11, 1993.

Roger L. Taylor, Hugh J. Totten (argued), Kirkland & Ellis, Chicago, IL, for plaintiff.

Lawrence Kahan, Paula Rotenberg (argued), Mulvaney, Kahan & Barry, San Diego, CA, for defendants Rorer, Armour, and Revlon.

William Grauer (argued), Gray, Cary, Ames & Frye, San Diego, CA, for defendants Scripps Clinic, Nakamura, and Zimmerman.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

RHOADES, District Judge.

### I. STATEMENT OF FACTS

#### A. *The Parties*

Scripps–Miles, Inc. ("Scripps–Miles") was a corporation jointly owned by Plaintiff Miles, Inc. ("Miles"), a pharmaceutical company, and Defendant Scripps Clinic and Research Foundation ("Scripps"), a non-profit research foundation. One purpose of forming the corporation was to prepare and sell immuno-chemical materials. Defendant Nakamura was hired by Scripps–Miles as Vice President, Technical Operations. Defendant Zimmerman is the executor and personal representative of the Estate of Dr. Theodore Zimmerman. Dr. Zimmerman was retained by Scripps–Miles in 1980 to serve as a consultant in the area of diagnostic immunology. Defendants Armour Pharmaceutical Co. ("Armour") and Revlon, Inc. ("Revlon"), were licensees of Dr. Zimmerman's patent rights. Defendant Rorer Group, Inc. ("Rorer") acquired the license for Dr. Zimmerman's patent when Revlon sold Armour to Rorer.

#### B. *Jurisdiction*

This Court has jurisdiction under 28 U.S.C. § 1332 because the citizenship of the parties is diverse and the amount in contro-

versy exceeds $10,000, exclusive of interest and costs.[1]

## C. The Technology

This case concerns monoclonal antibodies. The antibodies at issue in this case were used by Dr. Zimmerman to create a purified Factor VIII:C. Factor VIII:C is a substance that permits a hemophiliac's blood to clot. Without Factor VIII:C, hemophiliacs run great risks of blood loss. Purified Factor VIII:C serves its vital function without risk of transmitting AIDS or hepatitis through treatment.[2]

Dr. Zimmerman provided the Scripps–Miles Monoclonal Laboratory with the antigen that eventually led to the production of cell line 2.2.9—the cell line at issue in this suit. A cell line is "a clone or a population of identical cells, derived from a single cell." Fourth Amended Complaint at 7. "Created through genetic engineering, cell lines produce cells capable of continuous culture, immortalizing the rare and valuable qualities of a particular cell." Henry L. Hipkens, *That Failed Search for the Perfect Analogy: More Reflections on the Unusual Case of John Moore*, 80 Ky. L.J. 337 at n. 13 (citing United States Congress, Office of Technology Assessment, *New Developments in Biotechnology: Ownership of Human Tissues and Cells—Special Report*, OTA–BA–337, at 31–46 (1987)). Dr. Zimmerman later used cell line 2.2.9 to develop a patented process of purifying Factor VIII:C. Dr. Zimmerman assigned his patent rights to Scripps, which later licensed the rights to Armour and Revlon.

## D. Other Facts and Allegations

In 1982, Scripps–Miles, Inc. adopted a plan of dissolution and Miles received ownership of the Monoclonal Lab. Dr. Zimmerman and Scripps continued to use cell line 2.2.9, published articles on the purification of Factor VIII:C through monoclonal antibodies, and obtained a patent for the process of producing Factor VIII:C. Dr. Zimmerman assigned the patent to Scripps, who licensed the patent exclusively to Armour and Revlon. Revlon later sold Armour to Rorer.

Plaintiff alleges that prior to the Scripps–Miles dissolution, Scripps conspired with Dr. Zimmerman and Nakamura to transfer the right to commercialize the cell line to Scripps. Plaintiff further contends that the transfers of the cell line itself from Dr. Zimmerman to Armour and Revlon, and later to Rorer, were inconsistent with Miles's ownership interest in the right to commercialization of the cell line.[3] Plaintiffs further contend that Defendants Scripps, Dr. Zimmerman, and Nakamura breached a fiduciary duty, committed acts of deceit and fraudulent concealment, and committed actual fraud.

## E. Procedural Posture

This Court previously granted Defendants' Motion to Dismiss on statute of limitations grounds. On appeal, the Ninth Circuit stated, "We cannot say, on the limited record before us and in light of the alleged fiduciary relationship, whether Dr. Zimmerman's patent should have put a reasonable person on inquiry notice as a matter of law." *Miles v. Scripps Clinic and Research Foundation*, No. 89–56302, slip op. at 7 (9th Cir. Dec. 23, 1991).[4] The Ninth Circuit thereby held that the action could not be dismissed on statute of limitations grounds and reversed and remanded the case to this Court.

Defendants Scripps, Zimmerman, and Nakamura (Scripps Defendants) and Rorer,

---

**1.** This action commenced prior to November 19, 1988, the date on which the 1988 Amendment to 28 U.S.C. § 1332 (raising the minimum jurisdictional amount to $50,000) became effective.

**2.** For a general discussion of the use of Factor VIII:C, *see Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1568 (Fed.Cir. 1991).

**3.** Plaintiff later conceded that the transfer of the cell line itself was not at issue, but rather that the conversion claim was based on the alleged conversion of the right to commercialization of the cell line. Transcript of 11/23/92 Hearing at 23.

**4.** Text of unpublished memorandum opinion available on Lexis and Westlaw at 951 F.2d 361 (1991 WL 276450).

Armour, and Revlon (Rorer Defendants) now bring a motion to dismiss this suit based on the following theories: (1) no cause of action for conversion (all defendants), (2) no breach of fiduciary duty (Scripps Defendants only), (3) no fraud (Scripps Defendants only), and (4) statute of limitations (Rorer Defendants only). In addition, Defendant Zimmerman challenges her inclusion in this action as violative of Fed.R.Civ.P. 25.

## II. DISCUSSION

### A. *Conversion*

All Defendants allege that California does not recognize an action for conversion of the "right to commercialize" a cell line. I agree. In its remand to this Court, the Ninth Circuit had the following to say in declining to decide the issue:

> While the issues are purely legal, we note that the questions raised by Miles's causes of action are ones of first impression. Miles's conversion claim requires determination of whether a "right to commercialize" a cell line is a property right whose dispossession can give rise to a conversion claim, an issue not yet squarely addressed by California courts.

*Miles v. Scripps Clinic and Research Foundation,* slip op. at 8. As the Ninth Circuit correctly observed and Plaintiff concedes, the California courts have not directly addressed the issue. Transcript of 11/23/92 Hearing at 31. This Court must therefore decide the issue as one of first impression and apply California law as the California Supreme Court would apply it. *See Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), *Jones–Hamilton Co. v. Beazer Materials & Services, Inc.,* 973 F.2d 688 (9th Cir. 1992).

### 1. Is There a Conversion Claim?

■ Under California law, the elements of a conversion claim are (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or dispossession of plaintiff's property rights; and (3) damages. *Hartford Finan-*

*cial Corp. v. Burns,* 96 Cal.App.3d 591, 598, 158 Cal.Rptr. 169 (1979). The first of these elements is at issue in this case.

Plaintiff agrees that the conversion claim is not as to the cell line itself. Rather, it is the "right to commercialize" that was allegedly converted by Defendants. Transcript of 11/23/92 Hearing at 23, lines 8–14. Therefore, Defendants' extensive arguments that Defendants had a lawful, possessory interest in the cell line do not address Defendants' right to gain financially from the commercialization of an innovation. That Dr. Zimmerman physically was given cell line 2.2.9 is not relevant here; the "property" at issue is the intangible right to commercialize the cell line, not the cell line itself.

### 2. Ownership or Right to Possession of "Commercialization"

■ The claim of conversion here relates to an intangible right—a kind of property not traditionally considered capable of being converted. Generally, California law only recognizes "conversion of intangibles *represented by documents,* such as bonds, notes, bills of exchange, stock certificates, and warehouse receipts." 5 B.E. Witkin *Summary of California Law,* Torts § 613 (9th ed. 1988). Ordinarily, there can be no conversion of the goodwill of a business, trade secrets, a newspaper route, or a laundry list of customers. *Id.*

■ The Ninth Circuit recently interpreted California law on the issue of conversion of intangible property and enumerated a three-part test to determine whether a property right exists. *G.S. Rasmussen & Assoc. v. Kalitta Flying Service,* 958 F.2d 896 (9th Cir.1992), *petition for cert. filed,* 60 U.S.L.W. 3860 (U.S. June 5, 1992). "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *Rasmussen,* 958 F.2d at 903.

When viewed through the *Rasmussen* test, it appears that the right to commercialize a thing—here, a cell line—probably does exist as a property right under Cali-

fornia law. As demonstrated below, however, this property right is not one protected by a cause of action for conversion.

#### a. Interest Capable of Precise Definition

The commercialization of a cell line is an interest capable of precise definition. First, it is undisputed that a cell line is patentable subject matter under 35 U.S.C. § 101.[5] Second, under 35 U.S.C. § 271, the holder of a patent may enforce the exclusive rights flowing from the sale or use of the patentable invention. Thus, using patents as an analogy, the interest at stake here—making money from the commercialization of a cell line—*is* capable of precise definition.

Continuing with the analogy, since a patent holder may use a contract—often a licensing agreement—to regulate the "commercialization" of the patentable invention, the interest in the commercialization is similarly protected by contract. Since a commercialization interest may be defined by contract, the interest at stake here is "capable of precise definition" for purposes of this case as well. The first prong of the *Rasmussen* test is thus met.

#### b. Capable of Exclusive Possession or Control

Since cell lines may be patented, and since a patent provides the patent holder with exclusive possession or control of the right to exploit the patent for financial gain, the right to commercialize a cell line is, by analogy, also capable of exclusive possession or control. The contract analogy also demonstrates that the interest in commercialization is capable of exclusive possession or control, since contracts are often used to protect similar interests in reaping commercial rewards from biomedi-

cal technology. *See Moore v. Regents of University of California*, 51 Cal.3d 120, 144–45, 271 Cal.Rptr. 146, 793 P.2d 479 (1990), *cert. denied,* — U.S. —, 111 S.Ct. 1388, 113 L.Ed.2d 444 (1991). The second prong of *Rasmussen* is also met.

#### c. Has Putative Owner Established Claim of Exclusivity?

Plaintiff here has not established an exclusive right to commercialize based on the record before me. It is possible that such a claim could be found within the agreements of incorporation of Scripps–Miles, the hiring contracts for the employee Defendants, or the dissolution agreement. These documents are not before the court at this time. For purposes of this motion, this Court assumes that Plaintiff has established a claim of exclusivity for the right to commercialization of a cell line, so the third and final prong of *Rasmussen* is also met.

#### d. Conclusion

Under this analysis, it is possible to own a right to "commercialization." As explained below, however, no cause of action for conversion has been recognized under California law for the alleged conversion of a right to commercialize cell lines. Instead, the intangible property right is one not protected by a conversion cause of action.

### 3. California Approach to Conversion of Cell Lines

The California Supreme Court recently analyzed the issue of conversion of cell lines in *Moore v. Regents of University of California*, 51 Cal.3d at 144–45, 271 Cal. Rptr. 146, 793 P.2d 479:

> Thousands of human cell lines already exist in tissue repositories, such as the American Type Culture Collection and

---

**5.** *See Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565. In the landmark case *Diamond v. Chakrabarty*, 447 U.S. 303, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980), the Supreme Court held that patent protection extends to organisms produced by genetic engineering:

> His claim is not to a hitherto unknown natural phenomenon, but to a nonnaturally occur-

ring manufacture or composition of matter—a product of human ingenuity "having a distinctive name, character [and] use." ... His discovery is not nature's handiwork but his own; accordingly it is patentable subject matter under § 101.

*Id.* at 309–310, 100 S.Ct. at 2208 (citing *Hartranft v. Wiegmann*, 121 U.S. 609, 615, 7 S.Ct. 1240, 1244, 30 L.Ed. 1012)).

those operated by the National Institutes of Health and the American Cancer Society.... Since the patent office requires the holders of patents on cell lines to make samples available to anyone, many patent holders place their cell lines in repositories to avoid the administrative burden of responding to requests. At present, human cell lines are routinely copied and distributed to other researchers for experimental purposes, usually free of charge.

The *Moore* court also noted that exchange of cell lines is "increasingly limited by contract" as "a result of concerns over patent and ownership rights." *Id.* at 145 n. 40, 271 Cal.Rptr. 146, 793 P.2d 479. *See also In re Lundak,* 773 F.2d 1216 (Fed.Cir.1985) (discussing Patent and Trademark Office requirement that inventors deposit relevant biological materials with an independent depository before a patent application is filed). In refusing to extend California law of conversion to cell lines, the *Moore* court denied that Moore had a property interest in the cells from his removed spleen.

■ The instant case is distinguishable because Plaintiff *does* have a property interest in the right to commercialization of the cell line. However, it is not uncommon for a person to have an intangible property right without a cause of action in conversion to protect that right. *See generally* 5 B.E. Witkin, *Summary of California Law,* Torts § 613 (9th ed. 1988), Rest.2d Torts § 242, *Pearson v. Dodd,* 410 F.2d 701, 708 (D.C.Cir.1969) (information in noncommercial documents is a form of property for whose appropriation an action in conversion will not lie). *But see A & M Records, Inc. v. Heilman,* 75 Cal.App.3d 554, 142 Cal. Rptr. 390 (1977), *cert. denied,* 436 U.S. 952, 98 S.Ct. 3063, 57 L.Ed.2d 1118 (1978) (permitting action for conversion of intangible property right).

■ California has not recognized a cause of action for conversion of the intangible right to commercialization of a cell

line and this Court refuses to extend California conversion law. Instead, this Court follows California's trend of rejecting new theories of tort liability based on contracts, especially when such decisions are more appropriately the subject of legislative deliberation and resolution. *See Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 694 n. 31, 254 Cal.Rptr. 211, 765 P.2d 373 (1988) (declining to apply tort remedies for breach of the covenant of good faith in the employment context); *see also* 2 B.E. Witkin, *Summary of California Law,* Agency and Employment § 184A (1992 Supp.). Here, Plaintiff is essentially asserting a breach of contract claim. Had the contract claim been brought in a timely manner, the conversion claim would have been unnecessary. Now, Plaintiff seeks to attach a tort action to an expired contract claim. This Court refuses to create a new cause of action under California law.

Plaintiff may not argue that the right in question in this case deserves a conversion action on the ground that no other cause of action currently exists. A cause of action for conversion is unnecessary since contract or patent law would cover the alleged violation.[6] Here, Plaintiffs have brought suit based on conversion because they did not protect themselves through other available processes. Plaintiffs' lack of self-protection and the tolling of the statute of limitations on other remedies do not provide a valid reason to extend California's law of conversion, especially given the public policy considerations outlined in *Moore.*

### 4. Policy Implications After *Moore*

In *Moore, supra,* the California Supreme Court addressed the issue of the rights of a human donor whose cells, through research and experimentation, were eventually engineered to create a profitable drug.

*Moore* involved the creation of a cell line using cells from plaintiff's diseased spleen, which was removed by defendant out of

---

**6.** This decision does not rest on the fact that other remedies exist for a party in Plaintiff's position. Just as the *Moore* Court noted the availability of other remedies when it rejected the possibility of a suit for conversion of a cell line, so, too, does this court acknowledge that prudent parties may obviate the need for a conversion cause of action through advance planning.

medical necessity. Although defendant knew of the possible commercial value of the cells before they were removed, plaintiff was never notified of defendant's use of the cells from his spleen. *Moore,* 51 Cal.3d at 126, 271 Cal.Rptr. 146, 793 P.2d 479. The *Moore* defendants developed a cell line from plaintiff's cells and received a patent covering the cell line and various methods for using the cell line for commercially valuable medical procedures. *Id.* at 127, 271 Cal.Rptr. 146, 793 P.2d 479.

The California Supreme Court rejected Moore's conversion claim and stated that causes of action only existed for breach of fiduciary duty and lack of informed consent against the treating physician. In addition to the important policy consideration of a patient's right to make autonomous medical decisions, the Court addressed the policy of permitting biological sources to assert conversion rights. *Id.* at 142–27, 271 Cal.Rptr. 146, 793 P.2d 479.

According to the *Moore* court, extending conversion law into this area would threaten the economic incentive to conduct important medical research. "If the use of cells in research is a conversion, then with every cell sample a researcher purchases a ticket in a litigation lottery." *Moore,* 51 Cal.3d at 146, 271 Cal.Rptr. 146, 793 P.2d 479.

Furthermore, the *Moore* court explained that a cause of action for conversion of cell lines would not fit within the historical approach to conversion:

> No court, however, has ever in a reported decision imposed conversion liability for the use of human cells in medical research. While that fact does not end our inquiry, it raises a flag of caution. In effect, what Moore is asking us to do is to impose a tort duty on scientists to investigate the consensual pedigree of each human cell sample used in research. To impose such a duty, which would affect medical research of importance to all of society, implicates policy concerns far removed from the traditional, two-party

ownership disputes in which the law of conversion arose.

*Id.* at 135, 271 Cal.Rptr. 146, 793 P.2d 479 (citing Prosser & Keeton, Torts (5th ed. 1984) § 15, p. 89).

The *Moore* court's concerns that permitting conversion actions for cell line use are only partially related to the instant case. Whereas the *Moore* plaintiff supplied the raw cells that eventually led to the development of a cell line, here the cell line is the starting point. Thus, Justice Arabian's policy concern that courts may overstep the limits of their competency in fashioning a remedy is not implicated here.[7] No human donor is involved in the analysis at this level of medical research. For this reason, the *Moore* court's discussion of California's Health and Safety Code is likewise inapplicable here. Furthermore, the chilling effect on medical research that the *Moore* court feared is not identical here since the parties developing the cell lines are sophisticated researchers capable of protecting themselves legally, not patients who may be unaware of the economic uses for discarded body parts.

The expansion of conversion law into this realm could, however, implicate the policy concerns raised in *Moore* in other, non-medical contexts. Currently, a regime exists under which readily available cell lines are protected by contract or patent law and parties are on notice of possible claims on ownership and control. If these "protections" were expanded to include the strict-liability tort of conversion, then the threat of conversion actions would take away a measure of reliability of source materials and could create a chilling effect on research. The threat of a conversion action would thereby impose a duty of investigation on all subsequent users of cells and cell lines. Researchers would need to determine the "consensual pedigree"[8] of cell lines before beneficial research could be conducted. "Title insur-

---

7. The courts "cannot and should not seek to fashion a remedy for every 'heartache and the thousand natural shocks that flesh is heir to'" *Moore,* 51 Cal.3d at 150, 271 Cal.Rptr. 146, 793

P.2d 479 (Arabian, J. concurring) (quoting William Shakespeare, *Hamlet,* act III, scene I).

8. *Moore,* 51 Cal.3d at 135, 147, 271 Cal.Rptr. 146, 793 P.2d 479.

ance companies" for cell lines could become the norm. This costly result would add an entirely new procedural dimension to important medical research; time and money would necessarily be diverted to fund the search efforts for ownership rights. This result is unwarranted. Furthermore, it is beyond the competence of this Court to extend California's conversion law, to create a new cell-registry regime. Such a result is better left to the California Legislature.

Plaintiff raises a counter policy consideration, one that was raised in *Rasmussen:* Since the starting point in this action is with a human-engineered product (and not simply a naturally occurring cell), the opposite chilling effect could result. If entrepreneurs are not permitted the exclusive right to profit from their developments, then inventors will be less likely to invest the necessary time, money and energy into innovation. *Rasmussen,* 958 F.2d at 900. *See also* Timothy J. McCoy, *Biomedical Process Patents: Should They be Restricted by Ethical Limitations?,* 13 Journal of Legal Medicine 501, 518 (1992) ("Without economic incentives, given the high costs and high risks inherent in technological development in health care, it is unlikely that the amazing pace of health care improvements would continue.").

While this economic consideration of profit motive is a valid concern, even devotees of Ayn Rand could not dispute that the available protections provide adequate profit incentives for inventors. Patent and contract law already protect the financial incentives for development of new technologies.[9] No disincentive to ingenuity is created by the absence of a conversion cause of action. For this reason, the absence of a conversion law remedy to the interests at stake here does not implicate the *Rasmussen* policy concerns.

### 5. Conclusion

Under the foregoing analysis, Plaintiff *does* state a property right which is deserv-

ing of protection. The protections for that right, however, are not found in an action for conversion. Under existing California law, there is no cause of action for conversion for commercialization of a cell line and strong policy considerations weigh against expanding the conversion cause of action. This Court refuses to extend California law to impose liability—especially a strict-liability tort—for conversion of this type of property.

Defendants' motions to dismiss the conversion claim is therefore GRANTED. The conversion claim is dismissed as to all defendants.

### B. *Breach of Fiduciary Duty*

In Count II of the Fourth Amended Complaint, Plaintiff alleges a breach of fiduciary duty as to Defendants Scripps, Nakamura, and Zimmerman.

For purposes of deciding this motion, it is unnecessary to address the substance of Defendants' arguments. Since the breach of fiduciary duty is dependent upon the cause of action for conversion, no possible action for breach of duty lies here.

In its Fourth Amended Complaint, Plaintiff incorporates the conversion cause of action into its claim for breach of a fiduciary duty. Complaint, ¶ 54. In each and every paragraph alleging a breach of fiduciary duty, Plaintiff mentions conversion. Complaint, ¶¶ 54–57. Plaintiff has thus provided the seed for dismissal of the breach of fiduciary duty claim by linking it to the conversion claim, which this Court has found does not exist.

At the hearing on this motion, Plaintiff argued that an attempted conversion would provide an act that justifies a claim for breach of fiduciary duty. Transcript of 11/23/92 Hearing at 29–30. I disagree. This case is one in tort, not an attempt crime. An attempted conversion may not create a breach of fiduciary duty.

---

9. For a general discussion of the current framework of patent protection for biotechnology, *see* Dan L. Burk, *Biotechnology and Patent Law:* *Fitting Innovation to the Procrustean Bed,* 17 Rutgers Computer & Tech. L.J. 1 (1991).

### 1. No Fiduciary Duty [10]

Scripps Defendants also argue that there can be no claim for breach of fiduciary duty since these Defendants did not owe Miles a fiduciary duty. I agree.

As explained below, the fact that the entity created by Miles and Scripps was a corporation, not a joint venture, precludes liability for breach of fiduciary duty. By selecting the corporate form as a manner of achieving their goals, Miles and Scripps, both sophisticated parties, elected the benefits granted under that form and rejected the option and the benefits of continuing with a joint venture.

#### a. *Defendant Scripps*

 As to Defendant Scripps, it is not controverted that Defendant and Plaintiff were both equal shareholders in the newly formed corporation, Scripps–Miles, Inc. The general rule of limited liability of corporations is that shareholders do not owe each other a fiduciary duty. *See Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 81 Cal.Rptr. 592, 460 P.2d 464 (1969). The *Jones* case did give the narrow circumstance in which a fiduciary duty may be imposed: when a majority shareholder usurps a corporate opportunity from or otherwise harms the minority shareholder. *Id.* at 108, 81 Cal.Rptr. 592, 460 P.2d 464. Here, the exception is inapposite. Neither party is a majority shareholder so the *Jones* exception does not apply.

Plaintiff cites several older California cases in an attempt to find another exception to this rule, but Defendant effectively distinguishes those cases. In *Sime v. Malouf*, 95 Cal.App.2d 82, 95, 212 P.2d 946 (1949), for example, the court cited the definition of a joint venture as

a special combination of two or more persons, wherein some specific venture for a profit is jointly sought *without any actual partnership or corporate designation,* or as an association of persons to carry out a single business enterprise for profit, for which purpose they combine

their property, money, effects, skill and knowledge.

*Id.* (emphasis added). Here, the entity in question is a corporation. Additionally, the joint venture found by the court in *Sime* was between an individual and a corporation, and not between shareholders of a corporation as is the case here. *Sime* provides no exception for Plaintiff.

Another exception to the general rule against limited liability for corporations is usually discussed under the alter ego doctrine. Courts have enforced pre-incorporation agreements among the organizers of a corporation where the corporation "was formed as a mere agency for more conveniently carrying out the agreements of the parties; and the relation sustained by it to them is substantially, if not technically that of a trustee." 1 *Marsh's California Corporation Law,* § 5.3, p. 283 (3d ed. 1992), (citing *Hunt v. Davis,* 135 Cal. 31, 66 P. 957 (1901)). "In such cases, even though there is a corporate entity, a joint adventurer or partner may be treated as an equitable owner of assets contributed to the corporation." *Id.* at 284, (citing *MacMorris Sales Corp. v. Kozak,* 263 Cal.App.2d 430, 69 Cal.Rptr. 719 (1968)).

This "mere instrumentality" exception is not applicable here. The exception has not been used to impose upon shareholders the fiduciary duty that existed when the relationship was that of joint adventurers. Rather, upon the selection of the corporate form, new rights are created and old rights cease to exist.

Upon the incorporation of a partnership and its merger in the corporate entity, the partners cease to be such, and have only the rights, duties and obligations of stockholders. There no longer exist any rights or obligations which the partners as such can enforce, the one against the other.

8 Fletcher Cyclopedia of the law of Private Corporations, § 4018, p. 427 (Perm. ed. 1992) (citing *Nannizzi v. Caprile,* 43 Cal. App. 498, 185 P. 673 (1919) (partners can-

---

**10.** The following discussion of the substance of Defendants' arguments, though not necessary to resolution of the instant motion, provides an alternative ground for dismissing this cause of action.

not have the benefit of an agreement to incorporate and evade the provisions of it by which their respective rights in the partnership assets are determined)). This general rule is also applicable to the instant case.

Finally, Plaintiff's other cited cases, *Elsbach v. Mulligan*, 58 Cal.App.2d 354, 136 P.2d 651 (1943) (formation of corporation was goal of the joint venture), and *Foster v. Keating*, 120 Cal.App.2d 435, 261 P.2d 529 (1953) (addressing concern of fraud on third parties), are similarly distinguishable and therefore cannot support the allegation that a joint venture, rather than a corporation, was formed. Defendant Scripps' motion to dismiss the breach of fiduciary duty claim alternatively could be granted on this ground as well.

### b. *Defendant Nakamura and Dr. Zimmerman*

■ Defendants are correct that no fiduciary duty was owed to Plaintiff as a shareholder. Plaintiff alleges that Nakamura was an employee of Scripps–Miles, and that Dr. Zimmerman was a consultant. At most, a fiduciary duty might have existed *as to the corporation*, Scripps–Miles. A breach of this duty was not alleged, nor was the suit brought derivatively on behalf of the corporation, as is required in this situation. *See O'Hare v. Marine Electric Co.*, 229 Cal.App.2d 33, 36, 39 Cal.Rptr. 799 (1964) ("[M]isfeasance or negligence of corporate officer resulting in a loss of an asset is an injury to the corporation, and does not permit a nonderivative action by a stockholder in an individual capacity"). Here, Miles has not brought a derivative suit on behalf of the corporation, but rather a direct action as a shareholder. Miles also does allege that the action was brought on by Miles as the successor in interest of the corporation. Miles therefore does not allege breach of a fiduciary duty which it, in its capacity as shareholder, may raise on behalf of itself. Defendants Nakamura and Zimmerman's motion to dismiss the breach of fiduciary duty claim alternatively could be granted on this ground as well.

### c. *Fraudulent Concealment and Fraud*

In Count III of the Fourth Amended Complaint, Plaintiff alleges deceit and fraudulent concealment against Scripps, Zimmerman, and Nakamura. In Count IV, Plaintiffs allege actual fraud against the same defendants.

For purposes of this motion, it is also unnecessary to address the substance of Defendants' arguments. Since the fraud claims are dependent upon the cause of action for conversion and breach of fiduciary duty, no possible action for fraud exists.

In its Fourth Amended Complaint, Plaintiff incorporates the conversion and breach of fiduciary duty causes of action into its fraud claims. Complaint, ¶¶ 58, 62. Plaintiff grounds its fraud claim on the allegation that Defendants were "fiduciaries to Scripps–Miles and Miles." Complaint, ¶¶ 59, 63. Plaintiff also refers to the conversion as an underlying basis for the fraud claim. Complaint, ¶¶ 59, 60, 61, 64. Plaintiff has again provided the seed for dismissal of the breach of the fraud claims by linking them to the conversion claim, which this Court has found does not exist.

Defendants' Motion to Dismiss is GRANTED for this cause of action as well.

### d. *Statute of Limitations Has Run*

■ The Rorer Defendants renewed motion to dismiss on statute of limitations grounds need not be addressed because this Court has granted the motion on other grounds. If, however, this Court were required to decide the motion on this issue alone, Defendants still would be unsuccessful.

The Ninth Circuit remanded this case on statute of limitations grounds. The Rorer Defendants raise the issue again, claiming that the Ninth Circuit did not apply the discovery rule to them—at least not explicitly. The Rorer Defendants again argue that the statute of limitations has run.

The discovery rule, an exception to the general rule on statutes of limitations, provides that "the accrual date of a cause of action is delayed until the plaintiff is aware

of her injury and its negligent causes." *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1109, 245 Cal.Rptr. 658, 751 P.2d 923 (1988). In its ruling on this very issue, the Ninth Circuit stated, "We cannot say, on the limited record before us and in light of the alleged fiduciary relationship, whether Dr. Zimmerman's patent should have put a reasonable person on inquiry notice as a matter of law." *Miles v. Scripps Clinic and Research Foundation*, slip op. at 7.

Defendants' argument that the discovery rule is inapplicable to Plaintiff's claims against the Rorer Defendants was raised before the Ninth Circuit. The Rorer Defendants briefed the issue there. Defendants argue that, under the "law of the case" doctrine, "[l]ower courts are free to decide issues on remand so long as [the particular issues] were not decided on a prior appeal." Rorer Defendants Reply Brief at 6, (citing *Liberty Mutual Ins. Co. v. Equal Employment Opportunity Commission*, 691 F.2d 438, 441 (9th Cir.1982)). Defendants are correct that the Ninth Circuit did not explicitly reject Defendants' argument in the memorandum opinion, but it is also true that the Ninth Circuit rejected the statute of limitations issue without exception for the Rorer Defendants. The Ninth Circuit has squarely addressed the statute of limitations issue. This Court today grants the Defendants' motion to dismiss on the other grounds listed in this order. Absent dismissal on other grounds, however, this Court would deny Defendants' Motion to Dismiss based on the running of the statute of limitations.

e. *Zimmerman Inclusion Issue*

Finally, Defendant Zimmerman moves to dismiss the action as to her since Plaintiff did not follow Fed.R.Civ.P. 25(a) for substituting a party upon the death of a previously-named party. At the hearing at which this Court initially granted the motion to dismiss, I agreed to include Ms. Zimmerman with the following explanation:

Now, it may seem kind of strange that I have made this ruling in effect letting the defendants out of the lawsuit on the basis of the statute of limitations and yet on the other hand keep the estate in. But if this case is appealed, and I wouldn't be surprised if it is because it is a complex question, it didn't seem fair to me that the estate should not be a part of whatever goes on. And that's the reason why the estate has been left in.

Transcript of 8/14/91 Hearing at 25.

The Ninth Circuit refused to resolve the issue since Defendant Zimmerman did not separately appeal the issue of her inclusion in the action:

We are powerless to consider the motion to substitute parties unless separately appealed by Zimmerman. The motion to substitute parties was a distinct, separate matter, evidenced by the fact that the district court *granted* Miles's motion to substitute parties *prior* to dismissing the complaint. Accordingly, this court is without jurisdiction to resolve this claim.

*Miles v. Scripps Clinic and Research Foundation*, slip op. at 9 (emphasis in original).

Defendant Zimmerman now asks that the suit be dismissed as to her, even though this Court permitted substitution earlier. Defendant is, in effect, asking for reconsideration of this Court's earlier ruling since the reason for including Defendant—to benefit from a dismissal on appeal—no longer applies.

Defendant Zimmerman's challenge to substitution was that substitution was untimely. As a defense, Plaintiff argues that the suggestion of death upon the record was defective and that Plaintiff should not be held to the ninety day requirement for substitution under Rule 25.[11]

---

11. Fed.R.Civ.Pro. 25(a)(1) provides as follows: If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a

Courts have not construed the Rule 25 suggestion of death requirement strictly. For example, the Third Circuit has held that a pretrial memorandum filed within the ninety day period that set forth an intention to substitute the wife of the decedent as the executrix of the estate for plaintiff satisfied Rule 25, even though no suggestion of death was filed. *Anderson v. Republic Motor Inns, Inc.,* 444 F.2d 87 (3d. Cir.1971).

It is also true that any party may make a motion for substitution for a deceased party, *Roberts v. Rowe,* 89 F.R.D. 398 (D.C.W.Va.1981), and that a suggestion of death need not be made on the record before a motion for substitution can be made. *Dolgow v. Anderson,* 45 F.R.D. 470 (D.C.N.Y.1968). At the hearing on this motion, Plaintiff conceded that Plaintiff was aware of the party to be substituted as a result of probate proceedings in California state court. Transcript of 11/23/92 Hearing at 24–25. Notwithstanding the absence of a suggestion of death on the record, Plaintiff could have made a motion for substitution and served Ms. Zimmerman with the complaint. Since Plaintiff did not do so, however, and since the ninety days envisioned by the drafters of Rule 25 have long since expired, this Court finds that substitution was untimely. Defendant Zimmerman was not served until May 1992, long after the ninety days required under Rule 25.

This Court further finds that Plaintiff will not be prejudiced by the exclusion of Defendant Zimmerman from this action. As Defendants noted at oral argument and in their briefs, the only benefits Defendant Zimmerman received from the transactions underlying this action are derivative of what Scripps has received. Transcript of 11/23/92 Hearing at 10. There is therefore no reason for Ms. Zimmerman to remain in the case.

As a possible alternative ground for dismissing this case as to Defendant Zimmerman, Defendants raise the lack of compliance with Fed.R.Civ.P. 4(j) which requires

statement of the fact of the death as provided herein for the service or the motion, the ac-

that the complaint be served on a defendant within 120 days of its filing. While Rule 4(j) may provide an alternative ground for dismissing the case, it is unnecessary to this Court's resolution of the issues.

Defendant Zimmerman's motion to dismiss for failure to comply with Rule 25 is also GRANTED.

No causes of action remaining, this case is DISMISSED with prejudice in its entirety.

IT IS SO ORDERED.

tion shall be dismissed as to the deceased party.